THOMAS v. POOLE.

1. A decree for partition, regularly made by the Probate Court before the decision of :*Davenport* v. *Caldwell,* 10 *S. C.,* 331, must be sustained upon the principle of *communis error facit jus.*
2. The question raised, but not considered : What is the extent of the jurisdiction conferred by the constitution upon Probate Courts "in business appertaining to minors" and " in all matters testatmentary ?"

3. A will being incapable of execution according to its terms, a petition was filed in the Probate Court to have the lands and other property sold, and the estate settled according to the spirit of the will, all the heirs being made parties. *Held,* that it was, substantially, a proceeding for partition.
4. The Court of Probate is a court of record, and, within the limits of its jurisdiction, is not an inferior court.
5. Matters appearing in a referee's report and not excepted to, and no ruling thereupon made by the Circuit judge, cannot be considered here.
6. Under a devise to M. for life, and after her death to be equally divided between her children, but should she die leaving no child or children, or lineal descendant, then over, the interest of M.'s children was a contingent remainder, which interest could not be adjudicated during M.'s life-time, and to a proceeding for partition of this land they were not necessary parties.
7. A testator directed that money coming to his daughter M. should be paid to C., as trustee. C. died; and on M.'s petition another trustee was appointed by the Probate Court, to whom, through M.'s agency, her money was paid. *Held,* that the Probate Court was without power to appoint trustees; but that M. was estopped from questioning the validity of payments made to the trustee so appointed.

Before FRASER, J., Spartanburg, July, 1881.

The opinion states the case.

The Circuit decree, omitting its statement, was as follows :
The questions to be settled now, are—

1. What are the rights of the several parties under this will, under a proper construction of its terms? 2. Did the Probate judge have the right to adjust the equities of the parties and order a sale of this land for this purpose? Both questions are involved in doubt, and I approach them with misgivings.

The inquiry in all these cases is not what the testator intended to put in his will, but what intention is expressed by the will. The first is to make a will, and the second is to interpret or construe it. The testimony of Mr. Bomar, the ordinary, who drew this will, is not competent to show that a technical word in the will was used in other than a technical sense. He, of all others, ought to have known the meaning of such words. The memoranda found after testator's death, in his handwriting, are not admissible to explain the meaning of the words used in this

will, and, if admissible, could give no aid. The words must be held to their true and technical import, unless controlled by the context of the will itself, and the context may show that they have another meaning, and when this is done we find the intention of the testator, which is to govern. Words are to be construed in "their strict and primary acceptation," unless they appear, from the context of the will, to be used "in a different sense," in which case they will be so construed. *Wigr. & O'H. Wills, Prop. I., p.* 15.

I. In the fourth clause of the will, testator wills and bequeaths to Mrs. Thomas for life, &c., one of the parcels of land. In the seventh clause he directs that if the appraisement "heretofore directed, shows any inequality in the value of the legacies to my children, for the purpose of making them all equal the legatee or legatees receiving the larger shares shall pay in money to those receiving the smaller shares" until they are made equal, and if Mrs. Thomas shall be entitled to any money, the same to be paid to a trustee. Does the words "legatee" include Mrs. Thomas and "legacy" include the land? Now the property directed to be appraised in the will "heretofore," *i. e.,* before the seventh clause, was the land, the slaves given to Calvin Poole, and the railroad and bank stock to Washington Poole. If, under this clause, two legatees are to pay, then to whom, unless it is to a third or fourth who gets land? It seems to me that there is no escape from the conclusion that one to whom land is given is called in this clause a legatee, because only two, Calvin and Washington Poole, get personalty out of that appraised property. This conclusion is strengthened by the proviso in this clause that if Mrs. Thomas is to get money, it must be paid to her trustee. This proviso cannot refer to the money to be received under the ninth clause out of the residue, because that clause contains a similar proviso, that the money shall go into the hands of her trustee.

I see nothing in this clause, or in any subsequent part of the will, to require the word "children" to be construed to mean or to include grandchildren. Testator seems to have been careful to say "children" when he meant it, and "grandchildren" when he was providing for them. The word "children" is used with

a qualification, however, in one clause, as we shall hereafter see. 1 *Jarm. Wills*, § 684–5. It is, therefore, held that in the seventh clause the word "legacy" includes the land given to Mrs. Thomas, and the word "children" includes only Mrs. Thomas, Calvin and Washington Poole, and that by its provision they are to be equalized out of the property given to them and ordered "to be appraised" in the second clause of the will.

II. The ninth clause directs a sale of the residue and the payment of debts, and then the balance to be equally divided among my children, share and share alike, according to the statute of distributions, with a proviso that any money coming to Mrs. Thomas shall be paid to her trustee. In the tenth clause of the will, it is provided that "if the value (of the land given to the two sons of Luther Poole) amounts to more than equal share, they are to pay cash in money to their brother and sisters until all are equal." Whence the doubt on the testator's mind as to the value of the land amounting to more than equal share, unless he had made some provision in the will for this brother and sisters (children of Luther Poole, and, therefore, his grandchildren)? No other clause contains any provision for them, and, it seems to me, that the qualification of children in the ninth clause, by the words "according to the statute of distributions," shows that this is the true construction of the will, and that the three children, Mrs. Thomas, Calvin and Washington Poole, and the grandchildren, children of Luther Poole, take this residuum "according to the statute" *per stirpes*, and it is so held. *Ruff* v. *Rutherford, Bailey Eq.* 11; *Izard* v. *Izard*, 2 *Desaus.* 309; 2 *Wms. Ex.* 802; *Wigr. & O'H. Wills*, Prop. 1, *p.* 15.

III. If these views are correct, then the proper construction of the tenth clause is that William Thomas Poole and James Buchanan Poole take the land under the third clause of the will, after the death of the widow, subject to a charge to make "their brother and sisters equal" to themselves, taking into the estimate what is received under the ninth clause out of the residuum and the value of the land, and it is so held.

The testator made a specific provision for his widow, most of which was absolute; he gave a specific legacy to John Washing-

ton Thomas, a grandson; he gave his own children certain property, out of which, as amongst themselves, they were to be made equal; and he gave certain property to the children of Luther Poole, a deceased son, out of which they were to be made equal as amongst themselves, leaving only the residuum as a common fund. He intended to make them equal, but prescribed the mode in which this equality should be attained, and his will on this subject must govern, even if it fails to produce equality.

If, however, the Probate Court had jurisdiction over these matters, this court can review its judgment only on appeal and not here. The Court of Probate, by article IV., section 20 of constitution, has "jurisdiction in all matters testamentary and of administration." The court never assumed to exercise jurisdiction in partition of real estate under this section, but in pursuance of authority conferred by an act of the legislature. *Davenport* v. *Caldwell.* This act has been held by the Supreme Court to be unconstitutional. The Supreme Court, however, has held that the Probate Court has jurisdiction to order the sale of real estate in aid of assets for the payment of debts, because, by law, real estate had been made assets for this purpose. *McNamee* v. *Waterbury.* Even on this the court was divided. The word "administration" has been always held to apply to the control of the personal estate of a deceased person, and never to realty, and the ruling of our Supreme Court is the only exception, and, perhaps, rendered necessary by the statute making real estate assets for the payment of debts, and existing when the constitution was adopted. 1 *Jarm. Wills, p.* 1; 4 *Blacks. Com., chaps. XXIII., XXXII.*

There has been the same uniform usage in reference to the word "testamentary" in English and American law. It is true that a last will and testament covers both legacies and devises and disposes of real and personal estates. If the constitution had used the words "wills" or "devises" there would have been no doubt that it would have conferred jurisdiction over real as well as personal estates. This will, perhaps, be admitted, but it may be said that when, by the terms of a will, real estates are subjected to the payment of debts and legacies, then, by analogy to

the power to sell real estate for debts, the Probate Court can sell
real estate to pay and equalize legacies. By act of the legisla-
ture under a different constitution, ordinaries had power in
certain cases to sell land for division and partition and for the
payment of debts, but never without such authority. The power
to subject lands to the payment of debts and legacies, unless it
was done in pursuance of some special power in the will, was
always a matter of special equity jurisdiction, and it is so yet.
*Sharsw. Bl.*, *bk.* 3, *p.* 95, and *notes;* 1 *Story Eq.*, § 602. It is
not consistent with public policy that the estates, and especially
real estates of married women, minors and absent defendants,
shall be subjected in the almost private way in which these pro-
ceedings are taken in the Probate Court, to the judgment of
officers who, though of high integrity, have, for many reasons,
very little experience in adjusting the very delicate and often
very difficult questions which arise in these causes.

In the review taken by the court of this case the parties have
fallen into a very common error, and Washington Poole, who
has been without fault, ought to be protected as far as he can be
consistently with the legal rights of the other parties, but no
further.

The Court of Probate has no power to appoint a trustee, the
act of the legislature giving this power being void for the same
reason that it could not confer jurisdiction in partition. The
payment, therefore, to John W. Thomas, as trustee for Mrs.
Thomas, is void, and her share will have to be paid to a trustee
appointed by this court.

William Thomas Poole and James Buchanan Poole took under
the will an interest in fee in the land, subject to the payments
ordered in the will "to their brother and sisters." Their interest
was not of the same kind. While the two named took real
estate under the will, the others took only money, though
raised out of the land, and the same is true as to all the chil-
dren of Calvin Poole. If, therefore, either William Thomas
Poole or James Buchanan Poole has received his share of the
land after coming of age, the one so receiving is estopped
from claiming any further interest in the land or disputing, to
that extent, the title of Washington Poole; but, if the share of

either was paid to a guardian, then such payment is void, the guardian having no authority to consent to an unauthorized sale of the minors' land.  *Sm. Lead. Cas., p.* 662 ; 6 *Wait. Ac. & Def., p.* 687.  The interest of the other children of Luther Poole, and of the children of Calvin Poole, which was paid to their guardians, was properly paid and amounts to a payment *pro tanto* on their share.  The money was paid by the administrator, and, though it was irregularly raised, I do not not see how they can object to the mode.  They cannot be estopped, however, from claiming any additional sum which the land may bring under a valid sale by order of this court, over and above the amount already paid.  Washington Poole is entitled to their share, as of the day of the payment to the guardians.

If this is such an action for the recovery of land as to entitle Washington Poole to make his claim for betterments and improvements, such claim is more properly made after the judgment is rendered in this action, and then the sixth section, General Statutes, 1872, page 560, may affect the question of mesne profits.  All these questions should be left open and parties be allowed to take such action as may be suggested to them by counsel, and the report be recommitted to the referee.

It is therefore ordered and adjudged that the said two parcels of land be sold by the sheriff of Spartanburg county.  *   *   *

*Messrs. Bobo & Carlisle, Duncan & Cleveland,* for Washington Poole, appellant.

*Messrs. J. S. R. Thomson, Ralph K. Carson,* for the other appellants.

April 19th, 1883.  The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.  Elisha Poole, late of Spartanburg county, died in March, 1865, leaving of force a last will and testament.  He also left surviving three children, and the children of a deceased son, Luther Poole.  He died possessed of certain real estate, located in said county, and, also, of personal property.

In the second clause of his will he directed his land, three slaves and his stock in the South Carolina Railroad and South

Western Railroad Bank to be appraised, after dividing his land into two tracts.

In the third clause he "bequeathed" to his wife, Harriet Poole, during her life, one of these tracts, the homestead, and, at her death, to his two grandsons, William Thomas Poole and Buchanan Poole, to be divided as nearly equally between them as practicable, both as to quality and quantity. He, also, in this clause, gave to his wife a negro boy, Ben, and, at her death, to his grandson John Washington Thomas. The two first named grandsons were two of the children of his deceased son Luther, and John Washington Thomas was the son of his daughter Martha C. Thomas, one of the plaintiffs.

In the fourth clause he devised the other half of his land to his daughter Martha C. Thomas, during her natural life, and, at her death, to be equally divided between and among her children, share and share alike; but, should his daughter die leaving no child or children or lineal descendant surviving her, he then directed that said land be sold, and the proceeds divided among his children.   *   *   *

In the fifth clause he bequeathed to his son Calvin Poole, the three negroes he had directed previously to be appraised. In the sixth he bequeathed his railroad stock to his son Washington Poole.

In the seventh he stated "that it was his will and desire that, should the appraisement before directed show any inequality in the value of the 'legacies' to his children, for the purpose of making them all equal the legatee or legatees receiving the larger share or shares, shall pay in money to those receiving the smaller share or shares until all shall be equal, before they shall be entitled to receive these legacies; provided, that should my daughter Martha C. Thomas be entitled to any money, the same shall be paid to John B. Cleveland, whom I hereby appoint her trustee."   *   *   *

In the ninth clause he directed that all the rest and residue of his personal estate   *   *   *   should be sold   *   *   *   and, after payment of debts, the proceeds to be equally divided between his children, share and share alike, the portion going to his daughter Martha C. Thomas, to be paid to her trustee.

In the tenth he said : " In order to make my grandchildren, the children of my deceased son Luther Poole, equal in the distribution of my estate, I will and devise that the land bequeathed to them in the 3d clause of my will, be taken at valuation, and if the value thereof amounts to more than equal share, that they pay back in money to their brothers and sisters until all are made equal."

No executor was appointed in the will, and Washington Poole, a son of the deceased, administered with the will annexed. The appraisement of the property directed in the will to be appraised was had, and the administrator with the will annexed, finding it utterly impracticable to carry out the provisions of the will according to its terms, (because of the fact that the equalization directed could not be made, the parties being unwilling and unable to take the bequests and devises upon the conditions imposed, and because of the emancipation of the slaves,) with the knowledge and consent of most of the parties of age, if not all, and, as it seems, at the earnest solicitation of Mrs. Thomas, one of the plaintiffs herein, instituted proceedings in the Probate Court, in the nature of an action for partition, the purpose being, as stated in the petition, to have the real estate and railroad stock sold, and the estate settled according to the spirit of the will. The minors were all mentioned, and process prayed to bring all parties in, and guardians *ad litem* appointed for the minors to superintend and protect their interests, but no process was asked to bring in such of the plaintiffs in this action who are the children of Mrs. Thomas, it being understood that they had no such interest in the estate as entitled them to be made parties.

The Probate Court entertained jurisdiction, and finally made the following decree, to wit : " The parties in interest in this proceeding having had notice of the same and having appeared, do consent that all the land be sold. It is therefore ordered that the land, together with the railroad stock, all be sold on the first Monday in November next, or on some suitable sales-day thereafter, on one and two years' credit, with interest from date, except costs, which must be in cash on day of sale. This 11th day of October, A. D. 1872." The sale took place under

this order, and a settlement of the estate was made in the Probate Court in December, 1874, by which the proceeds were divided in equal shares between Washington Poole and Mrs. Thomas, the two living children of the testator, and the heirs of Calvin Poole and the heirs of Luther Poole, the two deceased sons of the testator. In accordance with this settlement, the proceeds have been in part, if not in whole, paid to the parties, or to their guardians; the portion going to Mrs. Thomas having been paid to a trustee, John W. Thomas, her son, who, upon her petition, had been appointed her trustee by the Probate Court, and who had given a sufficient bond with justified surety. The plaintiffs, Mrs. Thomas and her husband, and John W. Thomas, the trustee, it appears, were present at the sale and at the settlement, and not only made no objections, but were active in bringing it about.

The proceeding now before the court is an action brought on June 12th, 1879, by Mrs. Thomas and her husband and their children, to set aside and vacate the Probate Court proceedings, and have a settlement *de novo*, on the ground that the children of Mrs. Thomas, who, with herself and husband, are the plaintiffs in this action, were not made parties to said proceedings, and, therefore, they are not bound thereby in any event; and, also, on the ground that said proceeding being for partition of real estate, the Probate Court had no jurisdiction.

The case was referred to a referee, with instructions to take the testimony and report his conclusions of fact. Upon this report the case came on for hearing before Judge Fraser, who, in August, 1881, filed a decree, in which, after adjudging the rights of the several parties, and ruling that the Probate Court was without jurisdiction, whether it was regarded as a proceeding in partition or a testamentary matter, and, also, that the Probate Court had no power to appoint a trustee for Mrs. Thomas, he ordered the judgment of the Probate Court and all actions thereunder to be annulled, the lands to be resold, a recommittal of the case to the referee to report as to the shares of the different parties, the amounts which had been paid them, and some other matters preparatory to a final settlement, including a proper trustee for Mrs. Thomas.

From this decree all parties have appealed. The administrator, Washington Poole, appeals upon the ground mainly that the court erred in holding that the Probate Court was without jurisdiction to order the sale of the lands and to appoint a trustee for Mrs. Thomas, and, also, in holding that the payments made under the settlement to the trustee of Mrs. Thomas and the guardian of William Thomas Poole and James Buchanan Poole were void, and in not holding that the parties to the Probate Court proceeding were estopped.

The plaintiffs herein, to wit: Mrs. Thomas and her children, have appealed on the grounds: 1. Because the Circuit judge erred in construing the word "legacy" in the seventh clause of the will so as to include the land devised to Mrs. Thomas in the fourth clause. 2. In not holding that if in the seventh clause the word "legacy" includes lands devised to Mrs. Thomas, that then Mrs. Thomas should only account for the value of her life-interest therein. 3. In not holding that the children of Mrs. Thomas took a remainder in fee in the land devised to her. 4. In directing a sale of the lands without giving the plaintiffs an opportunity to pay such sum as might be necessary to equalize the defendants' interest and keep the land. 5. In directing the costs to be paid by the proceeds of the sales, instead of charging Washington Poole therewith.

William Thomas Poole and James Buchanan Poole appeal: 1. Because the Circuit judge held that if they received their share of the land after coming of age, they are now estopped from claiming any further interest therein or disputing Washington Poole's title (who was the purchaser at the Probate Court sale). 2. In not holding that the real estate should be appraised of its value immediately after the death of the testator. 3. In directing a sale of the real estate. 4. In directing the costs to be paid out of the proceeds of sale.

Mary E. Bryant and her husband, E. G. V. Bryant; Harriet M. Neighbors and her husband, Julian Neighbors; Raymoth V. Poole, Sarah H. Poole and Luther B. Poole, who are the children of Luther Poole, a deceased son of testator, and brothers and sisters of the two grandsons named in the third clause of the will as remaindermen to the widow of the testator, also have

appealed : 1. Because the judge erred in holding that the interest of any of the children of Luther Poole, which was paid to their guardians, was properly paid, and amounts to a payment *pro tanto* on their shares. 2. In directing the costs to be paid out of the sale instead of charging Washington· Poole therewith.

The fundamental question in the appeal is as to the jurisdiction of the Probate Court, and it seems to be so regarded by the appellants on all sides. We will first consider this question as to the subject-matter involved. It has been discussed, in part, as if it was a case of ordinary partition of real estate. The Circuit judge considered it in that aspect, and, under the case of *Davenport* v. *Caldwell*, 10 *S. C.* 331, held that the Probate Court had no power in the premises. He also considered it under section 20, article IV., of the constitution, by which jurisdiction in "all matters testamentary" was conferred upon the Probate Court; and he ruled that this did not apply, while admitting that it covered wills and testaments disposing of personal property, yet, inasmuch as the constitution does not use the word " devise," which is the technical word as to real estate in a will, he held it did not apply to devises.

It is true, since the case of *Davenport* v. *Caldwell*, and while it stands, this court cannot hold that the act of general assembly on this subject, and which was declared unconstitutional in that case, conferred any jurisdiction upon the Probate Court; and if we were considering this question as governed by that act, we would be compelled to sustain the Circuit judge. But Caldwell and Davenport did not consider the rights of minors as protected by the Probate Court under that provision of the constitution which confers jurisdiction upon that court " in business appertaining to minors." The parties were all adults in *Davenport* v. *Caldwell*, and the rights of minors were not adjudged there. This is still an open question, as the precise powers of the Probate Court under those terms have never yet been distinctly and authoritatively adjudged by this court that we are aware of, nor is it absolutely essential to decide it now.

We think the recent cases of *Herndon* v. *Moore* and *Schumpert* v. *Smith*, 18 *S. C.* 339, 358, are in point here, where this court held that whatever might be the true solution of the ques-

tion as to the powers of the Probate Court in a strict matter of partition, unencumbered with the other questions of "business appertaining to minors" "or matters testamentary," yet, where that court, in cases arising before *Davenport* v. *Caldwell,* assumed jurisdiction and acted without appeal, that upon the principle of *communis error facit jus,* the judgment must stand. We think that the doctrine established in these two late cases referred to *supra,* if this case is to be regarded as a partition case, must apply; and upon that doctrine the judgment below must be reversed. After the very able development and vindication of that principle as applicable to the numerous partitions by the Probate Court in every section of the State before *Davenport* v. *Caldwell,* by Mr. Justice McGowan in the cases cited, it will not be necessary for me now to do more than to refer to them as settling the question here, at least so far as this case is to be regarded as a partition case.

Was it a case of that kind? The property involved, consisting mostly of realty, belonged to Elisha Poole in his life-time. Had he died intestate this would have descended to his heirs-at-law, all of whom were before the Probate Court; but he died leaving a last will and testament, in which he disposed of this property to certain of those who were his heirs, upon certain conditions. It turned out that these conditions could not be complied with, and being conditions precedent, and not happening, the devises and legacies did not attach. The will became inoperative as to these, and the title to the lands descended as in cases of intestacy, and the proceeding in the Probate Court, though not in form strictly a partition proceeding, yet was so, substantially, and we think should be governed and controlled by the principles which have been established in such cases.

Such being our opinion, if the proper parties were before the court, it will be unnecessary to discuss the questions raised as to the rights of the parties under the different clauses of the will. Neither will it be necessary to discuss the powers of the Probate Court as to the "matters testamentary" provision of the constitution.

Next, Did the Probate Court obtain jurisdiction over the necessary parties? The following statement is found in the

judgment of the Probate Court, to wit: "The parties in interest in this proceeding, having had notice of the same, and having appeared, do consent that all the land be sold," &c. The Court of Probate is a court of record, and the record in such courts, as styled by Mr. Bigelow, is a remembrancer of what took place during the progress of the case; it is a memorial of the proceeding, and generally it imports such absolute verity that a party cannot aver as error of fact a matter contrary to the record.

The Probate Court, in its jurisdiction, is not an inferior court, but is so important that the same rule of construction is to be made in favor of its jurisdiction and the effect of its record as is applied to courts of general jurisdiction. *Herm. Estop.*, *p.* 148, § 140. Besides, there is no allegation in the complaint that there was a defect of parties in the case before the Probate Court, except as to the plaintiffs, other than Mrs. Thomas and her husband. Nor did the referee or Circuit judge find, as a matter of fact, that there was such defect. Under these circumstances, we cannot but assume that all the parties named, except the children of Martha C. Thomas, who are plaintiffs here, were properly before the court.

At this stage of the case we cannot look into the irregularities, if any, of service of summons, the appointment of guardians *ad litem*, &c. There was no exception as to these matters to the referee's report, nor any ruling made in reference thereto by the Circuit judge. The judgment of the Probate Court having stated that all parties had notice and had consented, until this is assailed directly in a proper way we are concluded thereby and must act upon it as a fact.

As to the plaintiffs, children of Mrs. Thomas: Their interest in the land devised to their mother in the fourth clause of the will, was a contingent interest—a contingent remainder—contingent upon their survivorship of their mother. It was not necessary, therefore, that they should have been made parties in the Probate Court. Nor have they yet any such interest as can be adjudicated by the courts. It is not at all certain but what Mrs. Thomas may outlive all of her children. It may be that the action of the Court now will not bind them if they should

happen to survive, but of this we give no opinion; we only mean to say that, until they have vested rights, they are premature in asking the assistance of the court by way of protection.

We concur with the Circuit judge that the Probate Court had no power to appoint a trustee for Mrs. Thomas, but this does not affect the main question here. It only affects the question of payment of her interest to this trustee. It seems that the trustee was appointed upon the petition of Mrs. Thomas, and through her agency—her own act—he received these payments; we think she is now estopped from repudiating them, or, which is the same thing, she must account in any future settlement for what he has received.

The payments to the guardians of the minors must be sustained.

It is the opinion of this court that the proceedings in the Probate Court should have been sustained except as to the appointment of a trustee for Mrs. Thomas; and to this end it is the judgment of this court that the judgment of the Circuit Court be reversed.