## 11053

### STATE v. THOMPSON

#### (115 S. E., 326)

1. CRIMINAL LAW—SERVICE OF NOTICE OF APPEAL OPERATES TO STAY EXECUTION OF SENTENCE PENDING APPEAL.—Service of notice of intention to appeal operates to stay the execution of sentence pending the appeal.

2. CRIMINAL LAW—JURISDICTION OF SUPREME COURT DID NOT ATTACH, WHERE NOTICE OF APPEAL WAS NOT PERFECTED.—Where notice of appeal was never perfected, but was abandoned, the jurisdiction of the Supreme Court never attached, under Supreme Court rule 23 (90 S. E., xi).

3. CRIMINAL LAW—MOTION FOR NEW TRIAL FOR FACTS OCCURRING AT TRIAL OR IMMEDIATELY CONNECTED THEREWITH, KNOWN TO MOVANT DURING TRIAL, MUST BE MADE BEFORE EXPIRATION OF TERM.—Under Const. art. 5, § 14, and in view of Cr. Code 1812, § 99, and Code Civ. Proc. 1912, §§ 324, 325, a motion for a new trial on the ground of facts occurring at the trial, or circumstances immediately connected therewith, known to the party moving or his counsel during

27—S. C.—122

the trial, cannot be made at a subsequent term, but must be presented to the trial Judge before the expiration of the term at which the trial was had.

4. CRIMINAL LAW—AFFIDAVITS HELD TO SUSTAIN FINDING THAT DEFENDANT'S COUNSEL DID NOT HAVE SUFFICIENT TIME FOR PREPARATION AND THAT DEFENDANT'S WITNESSES WERE RELUCTANT TO TESTIFY BECAUSE OF TENSE FEELING AGAINST DEFENDANT.—On motion for new trial, affidavits *held* to sustain finding that the defendant went to trial on charge of murder without adequate time for counsel to prepare defense, and that defendant's witnesses were reluctnat to testify through timidity or fear, because of the tense feeling in the community against the defendant.

5. CRIMINAL LAW—DEFENDANT HELD ENTITLED TO A NEW TRIAL ON THE GROUND OF WANT OF PREPARATION AND THAT HE WAS PREVENTED FROM HAVING A FAIR TRIAL.—Where defendant's counsel did not have time in which to prepare defense, because defendant was required to go to trial within less than four hours after arraignment with counsel appointed by the Court, and where defendant's material witnesses were reluctant to testify through timidity or fear, because of the tense feeling against defendant in the community, the Court was warranted in granting a new trial on the ground that defendant was prevented from having a fair and impartial trial.

6. CRIMINAL LAW—COURT HELD NOT PRECLUDED FROM GRANTING NEW TRIAL BECAUSE DEFENDANT'S COUNSEL WAS NOT GIVEN SUFFICIENT TIME FOR PREPARATION BY COUNSEL'S FAILURE TO DEMAND TIME.—Where defendant's counsel appointed by the Court did not demand time in which to prepare defense because of the tense feeling running against defendant in the community, his failure to demand time for preparation did not preclude the Court from granting a new trial on the ground that the defendant did not have a fair and impartial trial.

7. CRIMINAL LAW—DEFENDANT, BY ASKING JUDGE TO HEAR MOTION FOR NEW TRIAL AT SUBSEQUENT TERM, HELD ESTOPPED TO QUESTION JURISDICTION OF COURT AT SUCH TERM.—Where the Judge who heard the motion for a new trial at a term subsequent to that at which the trial was held would have had jurisdiction during the term at which the cause was tried, the defendant, by asking the Court to hear the motion at the subsequent term, is estopped to question the jurisdiction at such term.

8. CRIMINAL LAW—ORDER GRANTING NEW TRIAL ALLOWED TO STAND IN FAVOREM VITAE, THOUGH MADE AT SUBSEQUENT TERM.—In a murder prosecution, where defendant was induced to move for a new trial at a subsequent term by reliance on a decision of the Supreme Court in a preceding case authorizing such procedure, and where the Court found that defendant had not received a fair and

impartial trial, the Supreme Court, though of the opinion that the motion could not be made at the subsequent term and that the holding in the previous case should be overruled, will in *favorem vitae* allow the order granting a new trial to stand.

Before MAULDIN, J., Greenville, May, 1922.    Affirmed.

William Thompson was convicted of murder.    From an order granting a new trial the State appeals.

Affidavits were filed on motion for new trial, as follows:

### IN SUPPORT OF MOTION

Personally appeared before me J. Frank Eppes, who on oath says: That he is an attorney at law, practicing at Greenville, South Carolina. That he was appointed by the Court to defend William Thompson, who was charged with having murdered Policeman Burroughs, and appeared for the said Thompson at the trial. That deponent is informed and believes that the deceased was shot about 9 o'clock on the night of Friday, May 6, 1921. That the defendant fled, and a posse was organized and search immediately instituted. That the search continued through the night and practically all of Saturday; the defendant being arrested late Saturday afternoon about five miles from Greenville, near Paris station, close to the place at which the defendant worked. That during the day the posse increased to a large crowd, numbering about 100 people, most of whom were carrying guns or pistols, and some of whom had, during the day, gotten close to the defendant, with whom they exchanged shots. That in the exchange of shots the defendant was wounded in the leg. Fortunately the accused fell into the hands of the Sheriff, when the Sheriff's party was separated from the other part of the posse, and he took the defendant into his automobile and carried him to Spartanburg for safekeeping. That as a result of the killing of a white policeman, who was a popular officer of the city police force of Greenville, and in view of the circumstances surrounding the arrest of the defendant, public sentiment had become

highly inflamed, and prejudice against the negro defendant
was at a high pitch. That this feeling, deponent is informed
and believes, was further increased by reason of the fact
that only a year or so before two other Greenville policemen
had been brutally murdered by a negro desperado, who had
escaped, and who finally was executed in another State for
the crime of murder. That both of the daily papers in the
city of Greenville had carried full details of the homicide,
had printed the coroner's testimony, and had had a detailed
report of the case. That the Court of General Sessions for
Greenville County convened on Monday, May 9, 1921. That
deponent is informed and believes that the defendant was
secretly returned to the city of Greenville and lodged in the
county jail on that day. That deponent is further informed
and believes that, as soon as the Court convened, the so-
licitor presented one indictment to the grand jury, which
was the indictment charging William Thompson with the
murder of Policeman Burroughs, and requested that the
grand jury act upon that indictment and immediately re-
turn the same to the Court. That in the meantime deponent
was informed that the trial judge desired to see him and re-
paired to the courthouse. That, before going to the court-
room, deponent went by the sheriff's office. That there he
saw First Deputy George B. King and some of the other
deputies of the sheriff. That Deputy King told him that
deponent had been sent for because the Court wanted to
appoint him to defend the defendant, William Thompson.
That deponent talked with the deputies, the sheriff himself,
and with the solicitor, and while he cannot recall the exact
conversation, deponent gathered from their remarks that
they were apprehensive that, unless the defendant was im-
mediately tried, he would be lynched. Deponent was par-
ticularly impressed with the fact that an attorney was de-
sired who would not appeal the case, to further avoid a
lynching. That deponent told some one he was not de-
sirous of representing this defendant, for the reason that he

was on very friendly terms with Burroughs, but that he was an officer of the Court, and, if the Court requested him to defend the defendant, he would do his duty. That when deponent went into the courtroom he found that it was very much crowded. That the audience was tense and expectant, and deponent felt in the atmosphere that sentiment was hostile to the defendant. That deponent was appointed by the Court to represent the defendant, who was immediately arraigned at the hour of 11 o'clock, to deponent's best information and recollection. That counsel was impressed with the fact that the defendant had reached a state of mind where he expected to die, was ready to accept the inevitable, and was afraid to resist or do anything for himself, and when arraigned, before counsel could instruct him how to answer, pleaded guilty to the charge. That when asked if he was ready to go to trial, counsel stated that he was, of course, unprepared and would like some time. Counsel is of the impression that the Court asked him if he would be ready to go to trial by 3 o'clock. That counsel agreed to go to trial at that time for the reason that he felt that, if he should do anything to delay the proceeding, he would jeopardize his client's interests, and that he would be dealt with violently, and would certainly be lynched. For this reason, counsel felt impelled to relinquish the right of the accused to a copy of the indictment three days before the trial, which would have given time for preparation, and to go into the trial of the case wholly and hopelessly unprepared. That at the time that the hour for trial was discussed something was said about sending the witnesses to the deponent's office to discuss the case with deponent, but that the only person who came to his office was a sister of the defendant, who was not an eyewitness to the affair and knew nothing of the facts of the case. That deponent had only a very brief interview with his client in jail, and time to visit the scene of the homicide. That at 3 o'clock deponent went to the courtroom, although he was in no way prepared to go

into the trial. For the reasons above stated, deponent felt that the only safe thing for him to do was to proceed. That the same large crowd was in the courtroom and filled every available space. That counsel recalls on one occasion, when he was examining a witness, the crowd was pressing up closely to him, and when he turned to take his seat he found some spectator occupying his chair. That counsel sat for a time on the table, and called attention to the fact that he was without a seat, and it was not until then that he recovered his chair. That deponent believes that the jury was overawed by the circumstances surrounding this trial, by the crowd in the courtroom, the reports in the papers, and the unusual and unprecedented haste with which this man was forced to trial, and induced the jury thereby to bring about the verdict which they did. That the facts and the circumstances of the case showed no premeditation or design on the part of the defendant to commit murder, and deponent feels that, but for the unusual circumstances surrounding the trial and the conditions under which counsel was forced to go to trial, such a verdict would not have been rendered. That counsel is informed and believes that from the time of the committing of the homicide until sentence of death was pronounced upon the defendant not more than 72 hours had elapsed. Counsel, further deposing, says that the trial lasted through the afternoon past the hour of adjournment, which commonly is 6 o'clock, but that the Court remained in session, and the case was concluded and sentence pronounced at 9 o'clock Monday evening, the 9th; that the defendant was taken into custody by the sheriff, and counsel is informed and believes was again taken by automobile to Spartanburg for safe-keeping.

J. FRANK EPPES.

Sworn to before me this May 2, A. D. 1922.

T. H. MUNRO,<br>Notary Public for South Carolina.

Personally appeared before me J. Broadus Knight, who on oath says: That he is treasurer of the Minter Homes Company, a corporation, for which the defendant, William Thompson had been working. That the said William Thompson had been a faithful, respectful, and humble negro, and was well thought of by the white employees of the company, and deponent regarded him as the most trustworthy darky he had ever known. That deponent, feeling as he did, if he had been given an opportunity, would have engaged counsel and rendered assistance to the defendant in making his defense. That deponent was not aware that the defendant had even been brought back to Greenville until about 1 o'clock on the day he was tried. He heard rumors on the streets that the defendant would be tried at 3 o'clock, and deponent was unable to find out who was acting as counsel for William Thompson. That deponent went to the courthouse about 3 o'clock and saw that the trial had begun, several of the jurors having been accepted. That deponent hastened out to the offices of the Minter Homes Company, which at that time were situated about four or five miles from Greenville, to get two young ladies to testify as to his good character. That when deponent returned the courthouse was very crowded, the aisles full of standing people, and deponent had difficulty in procuring seats for the ladies. That deponent knows that there was considerable feeling against the defendant, William Thompson, and was impressed that there existed in the courtroom such feeling which created a very tense atmosphere, which was obvious to the jury, and which, in deponent's opinion, must have had its weight with the jury. That deponent was impressed with this incident that, when counsel for the defendant would ask questions of the witnesses, a distinct buzz and mumbling of disapproval could be heard throughout the courtroom. That deponent believes that the circumstances under which this defendant was tried were exceedingly unfair to him, and he apprehends that, if things had

not gone entirely satisfactorily to the crowd, the defendant might have been dealt with by violence.

           J. BROADUS KNIGHT.

Sworn to before me this May 3, A. D. 1922.

           W. D. PARRISH,
       Notary Public for South Carolina.

Personally comes before me H. R. Daniel, who on oath says: That he is secretary and manager of the Minter Homes Company. That he was called to the courthouse by Mr. J. Broadus Knight to testify as to the good character of the defendant, Thompson, after the case was in progress. That deponent did not know that the defendant, Thompson, had been brought back to Greenville until then. That the said Thompson was a peaceful, humble, respectful, and trustworthy negro, well liked by the employees of the company, and, if they had been given an opportunity and been allowed, they would have procured counsel for the said Thompson and aided him in making his defense. That when deponent reached the courthouse he found the courtroom very much crowded, people standing in the aisles, and even crowding in the bar. That the sentiment against the defendant seemed to be exceedingly hostile, and deponent is firmly of the opinion that the jury was impressed by this feeling. Deponent testified as to the defendant's good character and was himself apprehensive of his own safety. To deponent it appeared that the trial was nothing but a formality, that the result was a foregone conclusion, and that it was impossible for the defendant to obtain a fair trial under the existing circumstances, with sentiment so inflamed against him. Deponent believes, had not the verdict gone to suit the crowd, that the defendant would have been dealt with by violence.           H. R. DANIEL.

Sworn to before me this May 4, A. D. 1922.

           W. D. PARRISH,
       Notary Public for South Carolina.

·Personally appeared before me C. H. Riddle, who on oath says: That he is typewriting mechanic with Carter & Fair, and lives in Greenville. That he went to the courthouse about 5 o'clock in the afternoon, when the defendant, William Thompson, was on trial for killing Policeman Burroughs. That the courtroom was very much crowded, the crowd pressing up close around the jury box. That the defendant was on the witness stand when deponent was there, and it appeared to the deponent that the defendant was very much frightened and overawed by the crowd.

C. H. Riddle.

Sworn to before me this May 4, A. D. 1922.

P. A. Bonham,
Notary Public for South Carolina.

Personally comes before me W. F. Christopher, who on oath says: That he is the jailer for Greenville county, and was acting in such capacity at the time the defendant, William Thompson, was arrested. That the said Thompson was brought to the jail, to the best of deponent's recollection, late Saturday afternoon, May 7th. That the said William Thompson had been shot in the leg. That there was quite a little excitement, and people were crowding around the jail, and deponent advised with Sheriff Rector, and advised him to take the prisoner to some other jail. That to deponent's best information and belief the said Thompson was taken to Spartanburg, where he was kept until Monday morning, when he was brought back to the Greenville county jail. W. F. Christopher.

Sworn to before me this May 5, A. D. 1922.

T. H. Munro,
Notary Public for South Carolina.

Opposing Motion Submitted by the State

Personally appeared before me Harry A. Dargan, who, being duly sworn, says: That he is the clerk of the Court of Common Pleas and General Sessions for Greenville

County, and held said position at the time of the trial of William Thompson, who was indicted for the murder of George Burroughs. That during the trial of this case deponent was in a position to observe practically every one in attendance upon the Court, and deponent noticed nothing out of the ordinary, so far as the conduct of those in attendance upon the trial of this case. The case was conducted in a quiet and orderly manner. Deponent does not recollect seeing any one "pressing up close to the jury box." Deponent saw no evidence of violence and heard no threats against the defendant, William Thompson. There was nothing which occurred during the trial of this case, so far as deponent could see, which would influence or intimidate or overawe the jury who tried the case.          HARRY A. DARGAN,
C. C. C. & G. C., Greenville Co., S. C.

Sworn to before me this 10th day of May, 1922.
C. G. WYCHE,
Notary Public for South Carolina.

Personally appeared before me Carlos A. Rector, who, being duly sworn, says: That he is the sheriff of Greenville County, and held said office at the time William Thompson murdered George Burroughs, a policeman for the city of Greenville. That deponent was among those who did everything in his power to capture William Thompson after he had committed the deed, and knows that before the defendant would submit to an arrest he fired 30 or 40 shots at the officers who were seeking to apprehend him. The said William Thompson in every way acted as a desperado and a man who had no regard whatever for human life. That the said William Thompson shot one of the citizens, who was in the crowd seeking to arrest him, in the back of the neck, but fortunately the wound did not prove fatal. That as soon as the defendant was arrested by Policeman Cooley and others, and lodged in the Greenville County jail, deponent went to said jail to see the prisoner, and while at the

jail Jailer Christopher became excited and nervous, and requested deponent to remove the prisoner to Spartanburg County jail. That deponent then told Jailer Christopher that he saw no signs whatsoever of mob violence, and had heard no threat on the part of citizens to take the law in their own hands, and advised the jailer that the prisoner was perfectly safe in the Greenville County jail, and it was only upon the insistence of the jailer, who has entire charge of the Greenville County jail, that the prisoner was taken to Spartanburg. That deponent has observed heretofore in other cases that the jailer becomes excited and disturbed when there is no real reason for it. Deponent has read the affidavit by J. Frank Eppes, which alleges that the said attorney gathered from the remarks made by Deputy Sheriff George B. King and this deponent "that they were apprehensive and that unless the defendant was immediately tried he would be lynched," and that said attorney was "particularly impressed with the fact that an attorney was desired who would not appeal the case to further avoid a lynching." This deponent denies absolutely that any such conversation occurred between said attorney and himself, or between Deputy Sheriff King and said attorney in deponent's presence. Deponent had been on the lookout to observe any suggestion of violence on the part of the citizens of Greenville County, and during the entire proceeding failed to observe any evidence of an attempt of violence whatever. That after the defendant had been arrested deponent particularly observed that the citizens went to their homes and seemed to be content to allow the law to take its course. The defendant was brought back to the Greenville County jail on Sunday night before the trial and was treated as any other prisoner charged with murder. Deponent attended the trial of William Thompson during the entire proceeding, and has never seen a quieter or more orderly trial in his experience as an officer. That it is always de-

ponent's business to maintain order and quiet in the court-room during the trial of any case, and deponent did not have any difficulty whatsoever in maintaining peace and quiet. There was no evidence or any suggestion of mob violence one way or the other from those in attendance upon the Court. That deponent particularly observed the conduct of the Judge who conducted the trial of this case, and knows that every effort was made by said Judge to give the defendant the benefit of every reasonable doubt, and to give him a fair and impartial trial before a jury of his country. That deponent has read the affidavits filed in this case, alleging that the crowd of people in the courtroom "were pressing up close around the jury box." That deponent knows a statement to that effect is absolutely untrue. The people within the bar were seated in the seats provided for them, just as they are seated in practically every case that is tried in the Court of General Sessions. That there was no effort whatever on the part of those in attendance at the trial to overawe, influence, or in any way prejudice the rights of the defendant. That deponent failed to observe any buzzing or mumbling of disapproval when the defendant's attorney would ask a question of the witnesses. The attorney for the defendant seemed to be conducting the case in a cool, calm, and deliberate manner. That so far as this deponent knows none of the officers of the Court or of the sheriff's office requested the attorney for the defendant to waive the three days provided by the law. That while it is true the evidence showed that the defendant, William Thompson, committed a terrible deed, and murdered an officer who was loved by many good citizens of Greenville County, the defendant was given a fair and impartial trial, and a just verdict was rendered.       C. A. RECTOR.

Sworn to before me this 10th day of May, 1922.

W. A. BRAMLETT,
Notary Public for South Carolina.

Personally appeared before me J. D. Noe, who, being duly sworn, says: That, at the time William Thompson murdered Policeman George Burroughs in the county of Greenville, deponent was chief of police, and had held said position for many years. That deponent has had occasion many times to observe evidence of mob violence immediately after a crime is committed. That although the killing of Policeman Burroughs was a black and foul murder, and the attempt on the part of said William Thompson to slay all other officers who attempted to place him under arrest was reprehensible, yet, after the defendant had been arrested, the public seemed to be quite content to let the law take its course, to give the defendant a fair and impartial trial, as was done. That deponent heard no threats of mob violence, and does not believe that any attempt to lynch was even considered by the citizens of Greenville County. Deponent attended the trial of William Thompson and the case was conducted in a quiet and orderly manner. The presiding Judge gave the defendant the benefit of every reasonable doubt and saw that he was given a fair and impartial trial.                    J. D. NOE.

Subscribed and sworn to before me this 9th day of May, 1922                    C. G. WYCHE,
Notary Public for South Carolina.

Personally appeared before me George B. King, who, being duly sworn, says: That he is deputy Sheriff of Greenville County, and held this position at the time William Thompson was arrested and indicted and tried of murder of George Burroughs. The said William Thompson was arrested, as deponent is informed, by Sergeant G. L. Colley, Policeman Braun and Bob Foster, and carried to the Greenville County jail. That deponent, together with Sheriff Rector, went to the jail to see the defendant. As an officer of the law the deponent was particularly on the lookout to see if there was any evidence that the defendant would

be lynched or dealt with other than that provided by law, and so far as he could learn there were no threats or other actions which would warrant him in believing that the prisoner was in danger of mob violence. That Jailer Christopher requested deponent and Sheriff Rector to take the prisoner to some other jail, and it was only upon the jailer's insistence that it was decided to move the prisoner to Spartanburg County jail. There being no evidence of violence on the part of those present, the prisoner was taken through the crowd, where he could be observed by any one who was present, and driven up Main street in the city of Greenville, and on out the national highway to Spartanburg. The prisoner was not removed to the Spartanburg County jail on account of any threats which had been made or on account of any evidence of violence, but he was removed merely at the request of Jailer Christopher, who seemed to be more excited than any one else. That deponent has observed that the jailer on other occasions has become unnecessarily nervous and excited when a prisoner charged with such a crime is brought to the jail. That deponent advised the jailer there was no evidence of mob violence, and that the prisoner would be entirely safe in the Greenville County jail, but the jailer insisted that the prisoner be removed, and, the jailer in this county having entire charge of the jail, Sheriff Rector and deponent consented to remove the prisoner to Spartanburg County. That deponent denies that William Thompson was secretly brought back to Greenville, but states that he was brought back on Sunday night and lodged in the Greenville County jail. That deponent attended the trial of William Thompson, and brought him back and forth from the Greenville County jail to the courthouse, and throughout the entire proceeding deponent did not hear any threat or see any evidence that the prisoner's rights would be violated by the citizens who attended the trial. On the contrary, deponent observed that the public throughout the entire trial had decided to allow the law to take its course.

That deponent during the trial mingled among the crowd for the purpose of ascertaining whether there was any danger of violence to the defendant, and found that those present were entirely satisfied to allow the law to take its course. That deponent has read the affidavit of J. Frank Eppes, attorney for the defendant, who states that the said J. Frank Eppes "gathered from the remarks of deponent and Sheriff Rector that the officers were very apprehensive that, unless the prisoner was immediately tried, he would be lynched." Deponent denies absolutely that he made any remarks which would have given the attorney for the defendant such an impression. That during the trial of the case deponent did not observe that the consel for the defendant was under any fear or that he had been overawed by any one. On the contrary, the attonrey for the defendant conducted the case in a cool and calm and deliberate manner. That deponent has read the statement in said attorney's affidavit in which he states: "The crowd was pressing up closely to him and when he turned to take his seat some spectator occupied his chair." That deponent observed what happened on this occasion, and that the person who occupied the attorney's chair was a lady who worked at the Minter Homes Company, and who had come to the courthouse and later testified as a witness for the defendant. In other .words, the so-called "spectator" who occupied the attorney's chair was one of his own witnesses. At the same time this happened R. H. Daniel, another witness for the defendant, came and sat near by the lady. That deponent has read the affidavit of C. H. Riddle, wherein it is stated, "The crowd was pressing up close around the jury box," and deponent knows that this is absolutely untrue. That the people within the bar were seated in the seats provided for them, and there were not the slightest indications or evidence of intimidation or threats. That deponent has been an officer of the law for approximately 10 years, and has heard many trials in the courtroom, and observed the entire proceeding

in the trial of William Thompson, and knows from what he saw that the defendant obtained a fair and impartial trial. That the deponent has seen the courtroom on many occasions in the trial of other cases when there were a greater number of spectators than there were in the trial of this defendant, and deponent saw no evidence of hostility which was calculated to overawe, prejudice, or in any manner influence the jury. That deponent was a witness for the State in this trial, and is unable to see how the failure on the part of the attorney for the defendant to demand a copy of the indictment and the three days allowed by law would in any way prejudice the rights of the defendant.

                                        Geo. B. King.

Sworn to before me this 8th day of May, 1922.

                                   C. G. Wyche,
                    Notary Public for South Carolina.

Personally appeared before me G. R. Busbee, who, being duly sworn, says: That he is a resident of the city of Greenville, engaged in the furniture business. That he attended the trial of William Thompson, who was indicted for the murder of George Burroughs, and deponent remained in the courthouse during the entire trial of the defendant. That deponent was accompanied by his wife, Mrs. Busbee. That deponent has attended a number of trials in the courthouse of Greenville County and has served as a juror in the Court of General Sessions on a number of occasions. That deponent was sitting very near the front of the courthouse during the trial of William Thompson, and observed at least four women sitting near the front. That deponent did not observe any excitement in the courthouse whatever, nor was there any disorder at any time during the progress of the entire trial. The spectators were quiet and made practically no remarks at all, and deponent has never seen a more orderly trial in the courthouse. Deponent has heard read the affidavit of C. H. Riddle, stating that "the crowd was

pressing up close around the jury box," and deponent knows that such a statement is untrue, because the people near the jury box were entirely quiet and were seated in the seats provided for them in the courthouse. Deponent knows that there was nothing which occurred in the courthouse during the trial of the defendant which would excite or influence the jury in any manner whatever. That deponent has seen the courthouse of Greenville County more crowded on several other occasions than it was upon the day of the trial of William Thompson, and deponent could observe nothing out of the ordinary in the entire procedure. That deponent heard the testimony in the case from beginning to end, and from what he heard on the witness stand he was satisfied that the verdict could be nothing other than guilty of murder.                                    G. R. Busbee.

Sworn to before me this 8th day of May, 1922.

W. A. Bramlett,
Notary Public for South Carolina.

Personally appeared before me Mrs. G. R. Busbee, who, being duly sworn, says: That she is the wife of G. R. Busbee and attended the trial of William Thompson, who was charged with the murder of George Burroughs. That deponent had never attended a trial in the courthouse before in her life. That deponent sat on the front row of seats, just within the bar, and was in a position to observe the entire proceeding, and, being in the courtroom for the first time, deponent was impressed with the orderly procedure which occurred in this case. The audience was entirely attentive, and there was not the slightest indication of a disturbance, and there was no visible hostility shown by the crowd during the trial of this case. The people within the bar were seated in the seats provided, and deponent did not observe any spectators crowding around the jury box, or attempting to overawe or influence the jury in the trial of this case. That deponent has had no experience in observ-

ing trials heretofore, but was impressed with the fact that the defendant secured as fair a trial as could be expected.

MRS. G. R. BUSBEE.

Sworn to before me this 8th day of May, 1922.

W. A. BRAMLETT,
Notary Public for South Carolina.

Personally appeared before me Mrs. J. E. Smith, who, being duly sworn, says: That she is the wife of J. E. Smith and attended the trial of William Thompson, who was charged with the murder of George Burroughs. That deponent had never attended a trial in the courthouse before in her life. That deponent sat on the front row of seats, just within the bar, and was in a position to observe the entire proceeding, and, being in the courtroom for the first time, deponent was impressed with the orderly procedure which occurred in this case. The audience was entirely attentive, and there was not the slightest indication of a disturbance, and there was no visible hostility shown by the crowd during the trial of this case. The people within the bar were seated in the seats provided, and deponent did not observe any spectators crowding around the jury box, or attempting to overawe or influence the jury in the trial of this case. That deponent has had no experience in observing trials heretofore, but was impressed with the fact that the defendant secured as fair a trial as could be expected.

MRS. J. E. SMITH.

Sworn to before me this 8th day of May, 1922.

W. A. BRAMLETT,
Notary Public for South Carolina.

Personally appeared before me J. E. Smith, who, being duly sworn, says: That he is at present chief of police for the City of Greenville. That deponent went to the County jail of Greenville County a short while before the defendant, William Thompson, was removed to Spartanburg County for safe-keeping. That deponent, as an officer of the law,

was on the lookout for any evidence of disturbance that might occur, but deponent did not observe any indications that the defendant would be lynched, and the fact that he was removed to Spartanburg county was done only as a matter of precaution, in case the public should become inflamed. That the sentiment throughout Greenville seemed to be that the defendant should be tried by a jury in the Court of General Sessions and given a fair trial. Deponent was particularly impressed with this fact, because the defendant before his arrest had fired a number of times at the officers of the law who were seeking to apprehend him, and wounded one of the citizens who had been deputized to assist in making the arrest. Deponent failed to observe any effort on the part of the citizenship of Greenville County to mob the defendant, or to take any procedure other than that provided by the law. That deponent attended the trial in the courthouse, and was present during the entire procedure, and knows that the crowd was quiet, and deponent was unable to observe any effort on the part of those present to overawe the jury or to put his attorney in fear; but, on the contrary, the sentiment seemed to be that the defendant should be tried by a jury and a just verdict rendered. That deponent knows the affidavit made by C. H. Riddle, stating that the crowd was pressing up close around the jury box, is untrue. That there were no more people within the bar during the trial of William Thompson than there usually are when any case is tried in which there is considerable public interest.                       J. E. SMITH.

Sworn to before me this 8th day of May, 1922.

W. A. BRAMLETT,
Notary Public for South Carolina.

Personally appeared before me Sergeant G. L. Cooley, who, being duly sworn, says: That he is the officer who, together with Policeman Braun and Bob Foster, arrested William Thompson, the above-named defendant. That as

soon as the defendant was arrested he was brought to the Greenville County jail, and there placed in custody of the jailer. After delivering the prisoner, deponent went to police headquarters. That deponent has been an officer for 30 years and was particularly on the lookout for any evidence of mob violence in this case, but he failed to apprehend any danger to the defendant. On the contrary, deponent observed that the entire citizenship of Greenville County seemed to be satisfied to allow the law to take its course, believing that the jury and the Court would give the defendant a fair trial and render a just verdict. That deponent attended the trial for part of the time, and he did not observe any disorder or hear any threats or see any indications of violence. On the contrary, the trial was proceeded with in a most orderly manner, and the defendant was given the same opportunity to present his defense to the jury as other defendants, he having testified in his own behalf and told the jury just how the killing occurred. That while deponent was in the courthouse he failed to observe any one crowding around the jury box or in any way interfering with the orderly trial of the case; the people within the bar being seated in the seats provided for them. That deponent has observed on other occasions a larger crowd in the audience than was present when the defendant, William Thompson, was tried, and there was nothing which came to deponent's attention which would tend to intimidate an attorney, the jury, or any one else connected with the trial of the case.       G. L. COOLEY.

Sworn to before me this 8th day of May, 1922.

C. G. WYCHE,
Notary Public for South Carolina.

Personally appeared before me J. M. Jamison, who, being duly sworn, says: That he is a magistrate at Easley, Pickens county, South Carolina, and attended the trial of the State against William Thompson, who was charged with the mur-

der of Policeman George Burroughs. That deponent has been an officer of the law for more than 14 years and has had occasion to observe public sentiment in a number of cases. During the trial of William Thompson, this deponent was impressed by the orderly manner in which the trial was conducted, and was unable to observe any evidence of mob violence, and heard no threats whatsoever on the part of citizens attending said trial. Deponent did not hear any buzzing or mumbling of disapproval or approval during the examination of witnesses. Deponent was impressed with the fact that the public was determined to allow the law to take its course in this case, and to give the defendant a fair and impartial trial, and observed no evidence that an attempt would be made to lynch the defendant. That deponent saw no one crowding around the jury box, and the people within the bar were seated in the seats provided for them.                                    J. M. JAMISON.

Subscribed and sworn to before me this 9th day of May, 1922.                                    C. W. HIOTT, JR.,
Notary Public for South Carolina.

*Messrs. David W. Smoak, Solicitor,* and *Dean, Cothran & Wyche,* for appellant, cite: *Judge had no power to grant new trial on matters arising during the trial, after the end of the term:* 104 U. S., 410; 20 R. C. L., 303; 147 Fed., 153; 235 U. S., 55; 170 U. S., 675. *May be granted for after-discovered evidence:* 14 S. C., 428; 108 S. C., 295; 95 S. C., 29; 88 S. C., 555; 89 S. C., 308. *No prejudice to defendant shown:* 31 S. C., 156; 93 S. C., 195.

*Mr. Samuel M. Wolfe, Attorney General,* and *John M. Daniel, Assistant Attorney General,* cite: *Practice in granting new trials on after-discovered evidence:* 33 S. C., 401; 39 S. C., 416; 17 S. C., 218; 88 S. C., 555; 89 S. C., 308; 91 S. C., 29; 80 S. C., 367.

*Messrs. J. Frank Epps* and *Bonham & Price,* for respondent, cite: *Judge had jurisdiction to hear motion:* 89 S. C.,

314; 49 S. E., 164; 55 S. E., 868; 56 S. E., 694; 62 S. E., 632; 63 S. E., 147; 91 S. C., 35.

November 2, 1922.

The opinion of the Court *en banc* was delivered by Circuit Judge W. H. TOWNSEND.

The defendant, William Thompson, was on the 9th of May, 1921, indicted in the Court of General Sessions for Greenville County, tried, and convicted of murder of one George Burroughs, who had been killed on May 6, 1921. On the same day he was tried, the defendant was sentenced to be electrocuted on a later day in that month. His attorney, appointed by the Court, served a notice of intention to appeal, which operated to stay the execution of sentence pending the appeal. The notice of appeal was never perfected, but was abandoned, and the jurisdiction of the Supreme Court never attached thereon. Supreme Court Rule 23 (90 S. E., xi); *State v. Johnson,* 52 S. C., 505; 30 S. E., 592. Thereafter, on May 5, 1922, defendant served notice of a motion to be made, and which was made in open Court, before Hon. T. J. Mauldin, who had been presiding Judge at the term of Court in May, 1921, and was then the presiding Judge over a subsequent term of the Court, for a new trial on the ground that the defendant had not received a fair and impartial trial when convicted, as required by our Constitution and laws. The motion was heard on May 10, 1922.

On the hearing of this motion the defendant contended that he had been rushed to trial, without any opportunity to see his friends or to engage counsel, or to in any way prepare for his defense, in consequence of the courtroom being crowded by a multitude hostile to him, whose exhibition of hostility was calculated to, and did, overawe the jury, and that because of the presence of this crowd, and of verbal the Court to defend the defendant, such counsel did not threats, which had come to the ears of counsel appointed by

demand the time to which defendant was entitled for preparation of his defense, for fear that the defendant would be dealt with by violence, and defendant was thus forced to trial with his counsel hopelessly unprepared and not having any proper knowledge of his defense. The motion was based on affidavits tending to show a trial under such circumstances, and was heard by the Judge upon such affidavits and others contradictory thereto. After considering them, along with his own recollection of the trial before him, the trial Judge held:

"That the proceedings, while apparently true to all formal requirements, were void of vitalizing justice." *State v. Weldon,* 91 S. C., 29, 35–41; 74 S. E., 43 (39 L. R. A. [N. S.], 667; Ann. Cas., 1913E, 801); *Frank v. Mangum,* 237 U. S., 332, 335; 35 Sup. Ct., 582; 59 L. Ed., 969; *State v. Gossett,* 117 S. C., 76; 108 S. E., 290; 16 A. L. R., 1299.

He says:

"Many of the developments set forth in the accompanying affidavits are now for the first time revealed to me, and I am persuaded that the able and zealous solicitor was not cognizant, at the time of the trial, of many facts set forth in the affidavits here. * * * The prisoner was sent to trial upon the charge of murder within less than four hours after his arraignment, with counsel appointed by the Court, and with time all inadequate for the preparation of his case, * * * especially under circumstances, when feeling in the community naturally was high, and material witnesses were doubtless reluctant, through timidity or through fear."

And thereupon he granted the defendant a new trial. From the order granting the new trial the State appeals on the grounds: (1) That the Circuit Court had no jurisdiction to hear, entertain, or grant the motion; (2) that there was not sufficient evidence to support the findings of fact and order based thereon; (3) that the facts found were insufficient to warrant a new trial; (4) that there was no showing that the defendant was deprived of any additional

evidence, or otherwise prejudiced by the failure of his attorney to demand three days' view of the indictment before trial; (5) that there was no evidence before the Court that defendant did not secure a fair and impartial trial; and (6) that there was no evidence or showing on which to base a conclusion that the verdict would have been different if the three days' view of indictment had been claimed.

In abandoning the appeal noticed in May, 1921, and in making the motion for a new trial in May, 1922, the defendant's counsel relied upon the decision in *State v. Weldon,* 89 S. C., 308, 310–312; 71 S. E., 828, and 91 S. C., 29, 35–41; 74 S. E., 43; 39 L. R. A. (N. S.), 667; Ann. Cas., 1913E, 801, as authorizing the Circuit Court to entertain jurisdiction of the motion, and the Circuit Judge granted the motion under the authority of that case. The Attorney General, for the State, has obtained the leave of the Court to review these decisions.

In the Weldon Case, 89 S. C., 308, 310–312; 71 S. E., 828, the Supreme Court dismissed an appeal on the ground that the questions made, not having been passed upon by the Circuit Court, could not be considered or reviewed on˙ appeal, but in view of the grave issues involved in a capital case, *in favorem vitae,* dismissed the appeal without prejudice to any right the defendant might have to move before the Circuit Court for a new trial. Thereupon the defendants moved at a subsequent term of the Circuit Court for a new trial on two grounds: (1) Newly discovered evidence; and (2) that defendants had been convicted and sentenced to death, under circumstances very similar to those alleged in the case at bar, without a fair and impartial trial. The Circuit Court refused the motion on both grounds. The defendants appealed. 91 S. C., 29, 35–41; 74 S. E., 43; 39 L. R. A. (N. S.), 667; Ann. Cas., 1913E, 801. The˙ Supreme Court held that the defendants had not established a right to a new trial on the first ground, but were entitled to a new trial on the second ground.

The defendant's counsel contends that, as the abandonment of his appeal, and procedure by motion in the Circuit Court for a new trial, was induced by reliance on the decision in *State v. Weldon, supra,* if that decision is overruled, it should be without prejudice to the consideration of the motion in this case on its merits, citing *State v. Bell,* 136 N. C., 674; 49 S. E., 163.

"When a principle is once adopted and declared by the Courts, the people have a right to regard it as just declaration of the law, and to regulate their actions * * * thereby. * * * There should never be a disturbance of the same, except upon urgent reasons and a clear manifestation of error." *Lillard v. Melton,* 103 S. C., 25.

The Weldon Case (89 S. C., 308, 310–312; 71 S. E., 828; 91 S. C., 29, 35–45; 74 S. E., 43; 39 L. R. A. [N. S.], 667; Ann. Cas., 1913E, 801) stands alone, in so far as it authorizes a motion to be made for a new trial at a subsequent term of Court, on the ground of facts occurring at the trial or circumstances immediately connected therewith, which were known to the party moving or his counsel during the trial. Hence this Court is bound to consider whether such conclusion, there reached, is the law to be now followed in practice. *State v. Williams,* 13 S. C., 546; 554. See, also, *State v. Hooper,* 2 Bailey (S. C.), 37, overruling *State v. Petty,* Harp. (S. C.), 59.

There is no doubt that the Circuit Court, while it retained jurisdiction of the cause, could grant a new trial upon a proper showing being made therefor. Criminal Code, § 99; *State v. Bailey,* 1 S. C., 1; Wharton, Crim. Proc., § 1728.

"In this country the uniform and unquestioned practice, down to a comparatively late period, has been to extend to criminal cases, so far as the revision of verdicts is concerned, the same principles which have been established in civil actions. * * * whenever it appears there was * * * injustice in the procedure." 3 Wharton, Crim. Proc., § 1728.

The same act (1868, 14 St. at Large, 136) gives jurisdiction to the Circuit Courts to hear motions for new trials in both civil and criminal cases. Under our judicial system (Const. Art 5, § 14) the presiding Judge in the Circuit Court loses jurisdiction with the adjournment of the term, and a succeeding Circuit Judge at a subsequent term has no power to review or reverse the action of the presiding Judge at a prior term. *Warren v. Simon,* 16 S. C., 362; *State v. Price,* 35 S. C., 273; 14 S. E., 490. Hence Code Civ. Proc., §§ 324, 325, provides that motions for new trials on the minutes of the Court, and on a case or exceptions, must be heard at the same term at which the trial is had, unless, in the case of a motion on exceptions, the trial Judge directs them to be heard at a later date. Wherever the motion is based on facts occurring at the trial, as stated in the affidavits in this case, or facts and circumstances immediately connected with the trial, the motion must be made before the adjournment of the term at which the trial was had, or before sentence or judgment, or upon a case made up and settled by the Judge who tried the case. *State v. David,* 14 S. C., 431; *Clawson v. Hutchinson,* 14 S. C., 520. So illness of counsel, which would have been apparent to the trial Judge, has been held not to be available as ground for a motion for a new trial after the term. *State v. Mack,* 77 S. C., 388; 57 S. E., 1107.

In *State v. Williams,* 108 S. C., 295; 93 S. E., 1006, the Circuit Court was held to have jurisdiction after the expiration of term to hear a motion for a new trial upon newly discovered evidence, and the circumstance that the defendant's decision to enter the plea of guilty was influenced by the surrounding circumstances attendant on the trial and there known to him was not the basis for the motion. So in *State v. Foster,* 80 S. C., 348; 61 S. E., 564, an appeal was suspended to allow the defendant appellant to move on Circuit for a new trial on after-discovered evidence tending to show that a juror sat in the case with a determination before

the trial commenced to convict, regardless of and without hearing the evidence.

The motion in the case at bar is not to be governed by the rule as to jurisdiction in motions for new trial on the ground of newly discovered evidence, and the rule in that class of cases need not be here considered. The facts on which this motion is based are stated by defendant's counsel to have come to his ears, and to have been known to him, and to have affected his conduct, during and at the trial. In order to afford the basis for a new trial they should have been then called to the attention of the Court. *State v. Jones,* 89 S. C., 41; 71 S. E., 291, Ann. Cas., 1912D, 1298; *Frank v. State,* 142 Ga., 741; 83 S. E., 645, L. R. A., 1915D, 817.

For the reasons above stated the decision in *State v. Weldon,* 91 S. C., 29, 35–41; 74 S. E., 43; 39 L. R. A. (N. S.), 667; Ann. Cas., 1913E, 801, is overruled, in so far as it authorizes a motion for a new trial to be made at a subsequent term of Court, on the ground of facts occurring at the trial, or circumstances immediately connected therewith, which were known to the party moving, or his counsel, during the trial, and in the future all such motions must be presented to the trial Judge before the expiration of the term at which the trial is had.

The second and fifth exceptions are overruled, for the reason that affidavits submitted were sufficient to support the findings of facts by the trial Judge. The third exception is overruled, as the findings of fact were sufficient to authorize the Court to grant a new trial. *State v. Weldon,* 91 S. C., 29, 35–41; 74 S. E., 43; 39 L. R. A. (N. S.), 667; Ann. Cas., 1913E, 801; *State v. Gossett,* 117 S. C., 76; 108 S. E., 290; 16 A. L. R., 1299; *Frank v. Mangum,* 237 U. S., 332; 35 Sup. Ct., 582; 59 L. Ed., 969. The fourth and sixth exceptions are overruled, because the circumstances surrounding the trial, and found by the trial Judge to have then existed, show why the demand was not

made, and cause a presumption that the haste with which the trial was had was prejudicial to the defendant and prevented a fair and impartial trial.

The first exception is well taken by the counsel for the State, but the Judge who heard the motion would have had jurisdiction during the term at which the cause was tried, and the defendant, by asking him to hear the motion at a later term, as was done in the Weldon Case, is estopped to question the jurisdiction at that term. *Stroud v. U. S.,* 251 U. S., 15, 18; 40 Sup. Ct., 50; 64 L. Ed., 103.

The issue to the defendant is life and death. The trial Judge has found that he has not received a fair and impartial trial. The defendant was induced, by relinace on the decision in *State v. Weldon, supra,* to pursue the wrong remedy. The Court to which he applied, in reliance on the decision in *State v. Weldon, supra,* to pursue sidered the motion on its merits. While no constitutional rights can be based upon error in prior decisions (*Dunbar v. City of New York,* 251 U. S., 516, 518; 40 Sup. Ct., 250; 64 L. Ed., 384), yet under the circumstances of this case, as in *Thomas v. Poole,* 19 S. C., 323, *in favorem vitae,* it is more in accord with our constitutional system for the administration of justice to overlook the want of jurisdiction to hear the motion at the term when made, and allow the order granting the defendant a new trial to stand, and thus afford the defendant the fair and impartial trial to which he was entitled, than to refuse it, and leave to him as his only remedy an application for mercy to the executive department (who may only pardon), not on the ground that the judgment against him was wrong on the merits, but that the Courts have failed in a capital case to discharge their proper functions with due regard to the constitutional safeguards in the administration of justice. *State v. McNinch,* 12 S. C., 96; *State v. Washington,* 13 S. C., 455; *State v. Green,* 48 S. C. 147; 26 S. E., 234.

If a judgment in a civil action is obtained in consequence of excusable neglect on a defendant's part, the Court would be allowed, under Code Civ. Proc., § 225, to grant him relief. While this provision of the Code has no application to criminal proceedings, yet in a criminal case, where the circumstances surrounding the trial show that the defendant and his counsel were excusable for their neglect in failing to present a motion for a new trial during the trial term (which motion, if then made, would have been granted), and the motion is made by the defendant, and granted, at a later term, when the Court had lost jurisdiction to consider it, the Supreme Court, under the peculiar circumstances shown in this case, and *in favorem vitae,* may well allow the order granting the new trial to stand.

The order appealed from is affirmed.

MR. CHIEF JUSTICE EUGENE B. GARY, MR. JUSTICES COTHRAN and MARION, and WILSON, DEVORE, and FRANK B. GARY, Circuit Judges, concur.

MR. JUSTICE FRASER: At the conference, I thought that there should be a new trial, because the appellant had been misled by *State v. Weldon.* A further consideration of the Weldon Case convinces me that I was wrong. There is no doubt from our former decisions that a Judge of a Circuit Court cannot grant a new trial in a case heard at a previous term of the Court, for error committed on the trial of the case. This is true, even though the trial Judge has himself presided at the former trial. In the Weldon Case there was an appeal to the Supreme Court. The Supreme Court sent it back to the Circuit Court to have the questions raised passed upon. This it had the right to do, and the Circuit Court then was empowered to pass upon the motion. That was not done in this case.

This is a question of jurisdiction. No doctrine *"in favorem vitae"* can give jurisdiction. For these reasons, I concur with Mr. Justice Watts.

Messrs. Memminger, Sease, Rice, and Peurifoy, Circuit Judges, concur in the written opinion of Mr. Justice Fraser, and also in the opinion of Mr. Justice Watts to the same effect.

Mr. Justice Watts (dissenting) : I do not concur in the opinion of Circuit Judge Townsend, affirming the order appealed from. I think the order appealed from should be reversed, and the case remanded. Judge Mauldin did not grant the new trial on the ground of after-discovered evidence, but practically he acted as an Appellate Court, and reviewed the actions and doings of the Circuit Court. He reviewed the acts of the Circuit Court a year after the trial. He was clearly without power or jurisdiction to grant the order.

One Circuit Judge cannot review and set aside what another Circuit Judge does. The record is silent as to whether the defendant has a good and meritorious defense. I have very positive views that to affirm this order would be a very dangerous precedent to establish, and would bring about confusion in the administration of justice.

Messrs. Memminger, Sease, Rice, and Peurifoy, Circuit Judges, concur in the written opinion of Mr. Justice Watts, and also in the opinion of Mr. Justice Fraser to same effect.