16896

STATE v. JONES
(83 S. E. (2d) 179)

*Robert L. Kilgo, Solicitor,* of Darlington, *for Appellant,*

*Messrs. Tison & Tison,* of Bennettsville, *for Respondent,*

July 26, 1954.

MANN, Acting Associate Justice.

At the November, 1953 term of General Sessions Court for Darlington County, the defendant (the respondent in this appeal) J. H. Jones pleaded guilty to an indictment charging embezzlement and was sentenced by the Honorable James M. Brailsford, Presiding Judge, to service for one year with the orally expressed willingness after the service of four months to endorse a petition for parole. On December 12, 1953, the defendant, on due Notice given, moved before Honorable J. Woodrow Lewis, Resident Judge of the Fourth Judicial Circuit, at his Chambers for an Order granting a new trial or allowing defendant to withdraw his plea of guilty and/or revocation of the sentence.

The matter was heard on affidavits of the defendant and O. L. Scarborough, a deeply interested friend of defendant, and the Return of the State and affidavit of the Solicitor. Thereafter, on January 30th, 1954, Judge Lewis passed his Order providing that the sentence and plea be set aside and defendant given a new trial.

Notice of Intention to Appeal from the Order by Judge Lewis, and rested on two exceptions, was duly served to wit:

"1. It is respectfully submitted that His Honor, the Resident Judge, erred in holding that the Court had jurisdiction to hear respondent's motion, in that the motion came after adjournment of the term at which the trial was had and there is no showing of new matter not before the Trial Judge, or not within the knowledge of respondent, and there was no showing of after discovered evidence.

"2. It is respectfully submitted that should the Court hold that the Resident Judge had jurisdiction, His Honor, the Resident Judge, erred in granting the motion, the error being that respondent failed to show that he was misled, deceived, induced to plead, persuaded to plead or surprised, or that he was prejudiced by the action of the Solicitor or the Court, or that he had a defense to the charge or that his plea would be different if allowed to withdraw his plea of guilty."

Although the decision on the issue of Jurisdiction, raised in the First Exception fully disposes of the entire appeal, the Court feels that in justice to the Solicitor and the Presiding Judge, the Second Exception should be fully disposed of by direct decision and we will consider this exception first.

There is no controversy whatsoever between the State and the defendant as to the facts out of which this appeal arises.

The defendant had been Cashier of the Carolina Bank and Trust Company, of Lamar, S. C., and on examination of his records, was found short in his accounts. Upon discovery of the shortgage, a warrant was duly issued charg-

ing the defendant with embezzlement in the sum of $3,000-.00 of the Bank's funds. Thereafter, J. L. Scarborough, a friend of the defendant took it upon himself to acquaint himself generally with the whole matter and had a number of discussions concerning the case with the Solicitor. Mr. Scarborough undoubtedly interested himself very actively in behalf of defendant and set about to see what could be done in the way of mitigating any sentence that might be imposed upon defendant. Not only did he personally engage in such efforts but was apparently instrumental in enlisting the aid of a number of influential citizens of his community, including one or two ministers. Among other matters discussed, was the question put to the Solicitor as to the probability of reimbursement to the Bonding Company of the amount it had paid to cover the defalcation having a favorable influence in securing a probationary sentence. To this query the Solicitor advanced the opinion that such act of restitution would help in securing such a sentence. Accordingly a number of friends of defendant did raise the money and reimbursed the Bonding Company.

During this series of conversations between Mr. Scarborough and the Solicitor the question arose upon the initiative of Mr. Scarborough as to the advisability of procuring counsel for the defendant. The following taken from the affidavit of the Solicitor covers the admitted salient points raised on this issue.

"Affiant further states that he was asked if he would advise defendant to secure counsel. At that time affiant had in his possession the figures of the bank examiners showing the shortages against defendant, along with defendant's affidavit explaining how he accomplished the embezzlement. Affiant had also been assured that a release from defendant's bonding company would be presented to the Court. In addition affiant knew that numerous respected and esteemed citizens of defendant's home town would be before the Court to testify as to his good character, habits and traits. Affiant's recollection is that he stated he would never advise anyone

not to secure counsel, but that under the circumstances existing in this case, he did not believe that counsel was needed, or the language may have been as Mr. Scarborough describes it in his affidavit 'would not need a lawyer and that a lawyer could do him no good.'

"In closing, affiant again states that the affidavit submitted on behalf of defendant is accurate and fair. Defendant was not advised, persuaded or induced to plead guilty. That decision was his and he made it. Affiant does not believe that defendant was misled or that any misrepresentations were made to him. However, affiant believes that defendant had every reason to believe and expect that he would receive a suspended sentence and probation. It is the belief of this affiant that every one who took part in the various discussions understood at all times that the decision was to be in the hands of the Court alone."

It will clearly appear that the Solicitor in every instance was frank and unequivocal in his every statement. That he was convinced in his own mind that the defendant would probably receive a probationary sentence goes throughout the whole case. That Mr. Scarborough and the numerous friends and Ministers were fully apprised of his views cannot be doubted. That the Solicitor with the admitted plea of guilty in writing citing with mathematical accuracy, the amount embezzled, with the voluntary reimbursement of the bonding company already made in his hands, and defendant's declared purpose to enter his plea of guilty he was fully justified in arriving at the conclusion that with all these facts laid before the Presiding Judge supported by the several earnest pleas of friends and one or two ministers, the Presiding Judge would extend mercy, which mercy, he hoped would be characterized by a suspension of sentence, and that no further favorable influence could have been effective with the Presiding Judge.

The Solicitor never at any time had any direct conversation or communication with the defendant, as is indicated by

the Order of Judge Lewis, nor did the Solicitor ever state to the defendant that a lawyer "could do him no good."

The Solicitor stated to Mr. Scarborough that he would not oppose a probationary sentence, that he would make such a statement to the Presiding Judge and the Solicitor did make such a statement to the Presiding Judge at the time the sentence was passed.

There was no new matter presented at the hearing before Judge Lewis that was not fully in possession and knowledge of defendant prior to and at the time of trial. Nor is there any "admission of the State that defendant might well have been misled into entering a plea of guilty." Nor is there the slightest evidence that "an officer of the Court stated to him that a lawyer could do him no good". In these conclusions Judge Lewis is in error. There was no suggestion or request, advice or coercion brought to bear on defendant to enter a plea of guilty and as stated by the Solicitor, "the decision to plead guilty was his own and he made it".

The Solicitor at no time made any promise to Mr. Scarborough or to defendant through him or any other medium that he would ask the Presiding Judge for a probationary sentence, and the only reasonable inference is that regardless of high hopes for leniency, it was known by defendant and all concerned that the sentence "was to be in the hands of the Court alone".

With the defendant hoping to the point of belief that he would receive a probationary sentence, and with all his friends of the same conviction and with the Solicitor having openly expressed to the Court his satisfaction with such a sentence, one cannot be surprised at the sore disappointment of the defendant at the terms of the sentence imposed.

There was no prior understanding or agreement between the Presiding Judge and the Solicitor as to the terms of sentence nor had the Solicitor made any request or recommendation to the Judge thereabouts.

Judge Brailsford, in the face of all overtures, felt it his duty to impose the sentence passed. That was his responsibility. Certainly there was no abuse of discretion in refusing to place respondent on probation because his friends made restitution. Taking notice of the State-wide reputation that Judge Brailsford has for meticulous investigation into every plea made in his Court and of his known bigness of heart and his high regard for the presence of any doubt in his great mind as to the justice of his judgment, this Court is of the conviction that the absence of retained counsel at the time of this plea in no way militated against the interest of the defendant.

Counsel for defendant stresses with zeal the point that the facts upon which he relies in his motion were *"not known to the trial judge."* We find no decided case holding that in such a circumstance as this such facts should be known to the trial judge. We could see no possible advantage that could arise to the defendant by advising the trial judge that defendant appeared in his pleas without counsel, even upon advice of the Solicitor. The merits of the whole case bolstered by the strong and persuasive facts as to the reimbursement of the amount of shortage by interested friends, many of whom were presumably present and made a personal appeal to the Presiding Judge, the noted presence of one or two ministers among pleading friends, supported by the statement made by the Solicitor to the Presiding Judge that he did not oppose the probation so earnestly sought, all in vivid detail, were laid upon the conscience of the Court with great and persuasive force. With this situation surrounding him, the Court, a most able and learned man, justly known as a man of large and sympathetic heart, a man who always searches the evidence and available surrounding facts with most meticulous care, exercised that discretion vested in him and passed the sentence complained of. We would need a strong showing that the sentence would have been different had the Presiding Judge known of the con-

versation as to the advisability of having a lawyer by the Solicitor.

Able and resourceful counsel for defendant seeks with commendable earnestness to invoke the ancient common law principle of *coram nobis*. In substance it is rested upon the principle that where a person charged with crime has on the trial or passing of sentence been deprived of some substantial legal right, which if availed at the time of trial might have altered the result of the trial in behalf of the accused, but which, under the general rules in force may have been waived either through error of judgment or limitations of time fixed by law in which to act, has received sentence felt to be unjust, he may have his cause resurrected by the long arm of justice and fully reviewed regardless of contrary principles of law.

We do not venture the conclusion in this opinion that the mentioned rule might, under a relevant circumstance be either rejected or adopted as such. It is sufficient to say that it is our view that the rule here is not relevant and not necessarily passed upon.

A vital fact which cannot be passed without careful notice is that the *justice* of the sentence, considered in the light of the merits of the matter, has not been questioned.

As to the question raised by the First Exception, the authorities are numerous, clear and emphatic that Judge Lewis did not have jurisdiction to entertain the motion.

Under our system of Rotation of Judges, Judge Brailsford, who was the regularly assigned Judge to preside over the Courts of the Fourth Judicial Circuit, in which Darlington County is situated, was the Presiding Judge throughout the entire period of time beginning with the first Monday in September and extending through the 31st day of December, 1953. As such Presiding Judge, he was *always* present within the Fourth Circuit, either actively or constructively. Whether present actually or only constructively,

in no wise affected his jurisdiction within his assigned Circuit.

The Solicitor stated orally in his argument before the Court and this statement is not challenged, that Judge Brailsford was actually within the Fourth Circuit attending to his assigned duties at frequent times up to and until the latter part of December.

The rule is clearly stated in *The State v. Thompson,* 122 S. C. 407, 432, 115 S. E. 326, 334:

"Wherever the motion is based on facts occurring at the trial, as stated in the affidavits in this case, or facts and circumstances immediately connected with the trial, the motion must be made before the adjournment of the term at which the trial was had, or before sentence or judgment, or upon a case made up and settled by the judge who tried the case."

And the Court says further:

"For the reasons above stated the decision in *State v. Weldon,* 91 S. C. 29, 35-41, 74 S. E. 43, 39 L. R. A., N. S., 667, Ann. Cas. 1913E, 801, is overruled, insofar as it authorizes a motion for a new trial to be made at a subsequent term of court, on the ground of facts occurring at the trial, or circumstances immediately connected therewith, which were known to the party moving, or his counsel, during the trial, and in the future all such motions must be presented to the trial judge before the expiration of the term at which the trial is had."

The *Thompson case* was heard by a Court *en banc* and decided by a 7-6 decision which allowed the order for a new trial to stand in *favorem vitae,* but clearly laid down the rule which should govern future motions.

The ruling in the *Thompson case* was approved in the later case of *State v. Williams,* 221 S. C. 107, 69 S. E. (2d) 371, 372, with the added emphasis, "There can now be no doubt of the rule and the duty of the court to adhere to it in this case, which we do," and "the practical necessity of

this requirement of timely motions during term time is quite apparent. Otherwise there would hardly be any end of motions for new trial. It is requisite to the orderly administration of justice."

The case of the *State v. Hardee,* 197 S. C. 145, 14 S. E. (2d) 698, is enlightening. There the defendant had pleaded guilty to grand larceny, thinking he was pleading guilty to receiving stolen goods. On motion for a new trial, he showed he had a good and valid defense to the charge, would be in position to plead not guilty and that he had been taken by surprise when he pleaded. The Court held that notwithstanding the strength of his showing, the motion must be denied, and declined to follow the precedent indicated in the case of *State v. Harvey,* 128 S. C. 447, 123 S. E. 201. The Court held that it was its opinion that "the record fails to establish that the appellant was misled, deceived or taken by surprise in entering his plea of guilty; that there is nothing to show that the appellant was lacking in intelligence, or that he was overreached in any way; * * *." [197 S. C. 145, 14 S. E. (2d) 700.]

"Further, it is the opinion of a majority of the Court that if under the facts of this case a plea of guilty may be withdrawn, then in practically every similar case where the question is raised, the Court would be embarrassed by a most mischievous precedent; and, that such portion of the Harvey decision as permitted Harvey to withdraw his plea of guilty in unsound and constitutes a precedent which cannot safely be followed."

The exceptions are sustained and the Order of Judge Lewis granting a new trial is reversed.

STUKES, TAYLOR, OXNER and LEGGE, JJ., concur.