## 7972
### STATE v. WELDON.

1. INSTRUCTIONS AS TO MANSLAUGHTER AND SELF-DEFENSE have no application to a case where a man is assassinated in his home, nor in such case is there any reason to elaborate the meaning of malice, as there could be no doubt of malice being in the minds of the perpetrators.

2. INSTRUCTIONS AS TO THE TESTIMONY OF AN ACCOMPLICE *held* not to have led the jury to understand that they should not consider the turpitude of an accomplice in giving weight to his testimony.

3. TRIAL—NEW TRIAL—APPEAL.—The exceptions alleging such irregularities in the trial of this cause that the defendants were not accorded a fair trial, together with the record having been informally submitted to the trial Judge for his report, and there being nothing in this report to show the affidavits and matters therein alleged were ever passed on by the Circuit Court, the appeal is dismissed without prejudice to have these matters passed on by the Circuit Court.

Before GEORGE BROWN, Special Judge, Florence. Affirmed.

Indictment against Alex. Weldon and William Burroughs. Defendants appeal.

*Messrs. W. F. Clayton* and *Willcox & Willcox,* for appellants.

*Solicitor Walter H. Wells,* contra.

July 17, 1911. The opinion of the Court was delivered by

MR. JUSTICE WOODS. Elihu Moye was brutally murdered in his own home near Ebenezer, in Florence county, on the night of the 28th of October, 1910. Very soon thereafter, the defendants, Alexander Weldon and William Burroughs, were tried for the crime at a special term of the Court of General Sessions held for the purpose of the trial. They have appealed from the judgment of conviction and sentence of death.

The case has given this Court the utmost concern not only because the lives of the defendants are involved, but because the. record discloses that the trial took place at a time of great public excitement, because the material evidence against the defendants came almost entirely from one Clarence Ham, who claimed to be an accomplice and who was impeached as a witness by testimony that he had confessed that his accusation against the defendants was false, and because the allegation is made that the excited crowd so took possession of the courthouse and made such threats of violence that the defendants were not given a fair trial.

There is no merit in the exceptions to the charge. Instructions to the jury on the subject of self-defense and manslaughter had no application to the case. The evidence admitted of no other inference than that Elihu Moye had been assassinated in his own house, and the sole issue before the jury was whether the defendants had participated in the murder. *State* v. *DuRant,* 87 S. C. 532. For the same reason the defendants cannot complain of a failure to elaborate the meaning of the word malice, for there could be no doubt of the malice of the malefactor who committed the homicide.

The instruction as to the testimony of an accomplice was in accord with the law as stated in *State* v. *Sowell,* 85 S. C. 278.

The following language used by the Court evidently could not have been understood by the jury to mean that they were not to consider the turpitude of an accomplice in considering the weight to be given to his testimony. "The law in this State for a long number of years was declared by our Supreme Court to be that it was unsafe to convict upon the uncorroborated testimony of an accomplice. But our Supreme Court has recently changed that doctrine and it is not the law now. The law in regard to the testimony of an accomplice is just like it is as to

the testimony of any other witness in a case. That is to say, that you are the sole judges of the weight you should give to such testimony."

The exceptions alleging unfairness in the conduct of the trial are as follows: "His Honor erred in allowing a crowd, some of whom were bent upon killing the prisoners, to take possession of the courthouse, and hold the same during the trial, occupying every available space, including the bar reserved for the lawyers, to such an extent that the jurors were entirely cut off from the view of counsel, and counsel had to request his Honor on several occasions to cause the sheriff to clear away the crowd that counsel might see the witness he was examining. Thus in effect overawing the jury and as such the accused did not have that fair trial awarded them under the Constitution and laws of the State.

"That defendants have not had a fair and impartial trial, and have been convicted upon the testimony of Ham, an accomplice, alone, whose testimony is from the many contradictory statements unworthy of belief. That defendant's counsel, hearing the reports upon the streets of lynching as he went to the courthouse at the solicitation of the special Judge, and seeing the unusual crowd in the courthouse, did not dare to ask for the three days allowed by law for fear of the murder of his clients. That from this fear he was unable to get up any testimony in behalf of his clients, and went into the trial without knowledge of his defense. That since the trial, defendant's counsel has obtained the affidavit of Sallie Weldon, the wife of Alex. Weldon, which is incorporated in the case, tending to show an *alibi* for both of the defendants. That defendants' counsel knew nothing of this evidence, nor could have known of the same unless he had insisted upon his three days, in which event, counsel fully believes that he would have endangered the lives of his clients if he had demanded his

three days, and by reason thereof defendants have not had a fair trial."

After argument of the appeal this Court made the following order with respect to these exceptions: "As a basis for exceptions charging that the proceeding resulting in a verdict of conviction were so improper or irregular that they should be held not to constitute a fair and legal trial, the defendant should set out in the proposed case the facts relied upon; and if the case as so made up be not agreed to, it should be submitted to the Circuit Judge for settlement. In this case the defendants' counsel has submitted to this Court in support of his exceptions affidavits which have not been passed upon by the Circuit Judge by motion for a new trial or otherwise. As the lives of the defendants are involved, the Court will overlook all irregularities, and of its own motion refer the entire record to the Circuit Judge so that he may report fully upon all the matters alleged in the affidavits and exceptions.

"It is therefore, ordered that the clerk of this Court do transmit to the Hon. Geo. W. Brown, the special Judge who presided at the trial, a copy of the entire record, together with a copy of this order, to the end that he may forthwith certify to this Court a statement of all the conditions surrounding the trial and the facts connected with the trial so far as they are germane to the exceptions above quoted and the matters alleged in the affidavits appearing in the record."

In response to this order the following certificate as to the conduct of the trial was submitted by Hon. Geo. W. Brown, the Special Judge who presided at the trial:

"The entire appeal record having been referred to me as the trial Judge in the above stated case, by an order of the Supreme Court for a full report upon 'all the matters alleged in the affidavits and exceptions' to the end that I certify to said Court a 'statement of all the conditions surrounding the trial so far as they are germane to the exceptions quoted' in said order 'and the matters alleged in the affida-

vits appearing in the record' I beg leave to 'report' and 'certify' that I went from Darlington to Florence on the day of the trial on the car by morning train arriving on or about schedule time 8 :30 or 9 o'clock a. m. and Court convened at 10 o'clock a. m.

"There was a large crowd in Florence during the day and when this is stated all is stated which I know which could excite even casual interest except that an atrocious assassination of a worthy citizen had been committed and that the parties charged with the crime were there and then to be tried and the presence of the crowd was supposedly due to these facts. The presence of such a crowd under these circumstances was natural and proper and was no surprise to me. I saw very many there personally known to me to be of the best citizenship of the county and of its most law abiding and patriotic personnel. Why that crowd is denominated a mob I do not know. It certainly manifested no mob spirit to my eye or within my hearing. It was just simply a crowd and quite a crowd for Florence court room and that is all that can be said about it except 'that it was the best behaved crowd I ever saw' and I am here quoting in effect my own words when defendants' motion for a new trial was overruled. It did crowd within the bar of which fact I was not unobservant, but to say that it was in possession of the courthouse and held the same during the trial is a gross misconception of the conditions as I saw them. I had a right to assume and did assume that the presence of that crowd was for a lawful purpose not only consistent with the best citizenship, but composed, as it was, in support of law and order. It was certainly wholly lacking in any element of a riotous assemblage and in no respect was it disorderly; and in this regard as I am expected to make 'a full report' it is proper that I should particularize by saying that I saw no evidence of drunkenness, (or even evidence of drinking), in the crowd and it was in all respects quiet and well behaved. An individual instance of boisterousness or bad conduct did

not come within my observation during the term. In every instance when I observed that it was becoming too much crowded within the bar or my attention was called to such conditions my admonitions received the most respectful consideration and obedience, and there was never any crowding within the bar that in any way interfered with the orderly dispatch of the business of the Court or with the rights of counsel or the accused.

"If the jury was overawed, intimidated or put in fear I am at a loss to know what did it. No member of the jury made any complaint before, during or since the trial to me; the sheriff was there and he likewise made no complaint. I went to and from the courthouse unattended and I have yet to see or hear of any threats or overawing conditions. There was no military in attendance and none suggested, though there is an excellent company in Florence, one in Darlington and another in Timmonsville, each only ten miles distant.

"Counsel for defense did not request the three days and copy of the indictment to which he was entitled on demand, and such demand would most certainly have been granted without any apprehension of danger to counsel or defendants. If there was anything improper or irregular in this trial I do not know it, and as long as the statute stands for the speedy trial of criminal offenses at special terms, I doubt if there will ever be in this State a more quiet and less sensational trial.

"Defendants were ably defended, and the result of the trial is due to the weight which the jury gave to the testimony, which is their exclusive province."

The certificate of the Circuit Judge cannot of itself have the effect of an adjudication, and it fails to show that the questions made by the affidavits as to the threats made against the defendants and their counsel, the conduct of the trial, and the alleged newly discovered evidence, have at any time been passed upon by the Circuit Court. After much

consideration there seems to be no escape from the conclusion that this Court cannot now consider the grounds for a new trial set out in the exceptions and affidavits, for the reason that it does not appear in the record that they have ever been passed upon by the Circuit Court. Questions of fact of the gravest character are involved which should be determined by the Circuit Court after a full opportunity has been given to the State as well as the defendants to be heard.

The appeal must therefore be dismissed without prejudice to any right the defendants may have to move before the Circuit Court for a new trial.