19520

The STATE, Respondent, v. Andrew BELLUE, Appellant.

(193 S. E. (2d) 121)

*Messrs. W. M. Brice, Jr.,* of York, *James T. Irvin, Jr.,* and *Robert M. Jones,* of Rock Hill, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Emmet H. Clair,* and *Robert M. Ariail, Asst. Attys. Gen.,* of Columbia, and *William R. Hare, Sol.,* of Chester, *for Respondent,*

November 20, 1972.

LITTLEJOHN, Justice:

The defendant, Andrew Bellue, is appealing from a jury verdict finding him guilty of murdering Billy Hinson and from the sentence of death by electrocution pursuant to Section 16-52 of the 1962 Code of Laws.

Defendant raises several questions in his brief. He submits that the court erred in excusing for cause a prospective juror who was opposed to capital punishment. He urges that it was error to allow in evidence defendant's involvement in separate and independent criminal activities. He contends that photographs were erroneously made exhibits to his prejudice. And, asserts that the confession of defendant should have been excluded.

Exceptions challenging the judge's excusing juror Stevens were not argued and are therefore considered abandoned. In oral argument of the case, counsel in open court abandoned his challenge of the judge's ruling as to juror Clack (who was opposed to capital punishment) in the light of *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. (2d) 346 (1972).

The defendant contends that a small 22 caliber pistol was improperly admitted into evidence because of the failure of the State to connect it to the murder of Billy Hinson. A brief summary of the testimony surrounding the pistol is in order.

Mrs. Nancy Hinson stated that the last time she saw her husband Billy Hinson alive, he was leaving in his car with the defendant Andrew Bellue. Dr. William Wallace, the Chester County physician, testified that Billy Hinson had died of a bullet wound made by a small caliber bullet: "Probaby a 22." Elizabeth Kimbrell testified that the defendant, using a "little black pistol", had forced her to drive him in her car to the area where the deceased was found and to the general area where the defendant was later arrested. She ran and abandoned the car and the defendant. Lieutenant Boyd, of the York County Sheriff's Department, testified that he found the pistol in the abandoned Kimbrell car and identified the pistol marked for identification by saying:

"Yes, sir, this is the gun, because this pin was gone, because I unloaded it at the scene and the pin was gone." Sergeant Smith, of the Rock Hill Police Department, testified that he found a "shell ejecting pin which comes from a cheap type 22 caliber pistol revolver" in the car owned by the victim, Billy Hinson. He also stated and demonstrated that the pin was the type missing from the pistol found in the Kimbrell car. Sergeant King, of the Chester County Sheriff's Department, testified that when he found and arrested the defendant he was in Billy Hinson's car and that custody of the car was given to police officers from Rock Hill. And so, we have evidence that a pistol used by defendant was found in Kimbrell's car and a pin matching the one missing from the pistol was found in Hinson's car, in which the victim was last seen alive and in which the defendant was arrested.

It is recognized without citing authority that evidence may be of two kinds, direct and circumstantial. In this case, there was no direct evidence as to the pistol being the murder weapon. The case is based on a chain of circumstantial evidence. In *State v. Graham*, 237 S. C. 278, 117 S. E. (2d) 147 (1960), the Court stated:

"It is said that the cap was not connected in any way with either appellant and that the evidence was not sufficient to identify the gloves as having belonged to Holland or to show that they had any connection with the crime. Both of these articles were discovered by the firemen immediately after the fire. The can cap was admissible for whatever it might have been worth as a link in the chain of evidence tending to establish the *corpus delicti*. The fact that Holland had been wearing gloves similar to those introduced in evidence justified their admission. Of course, the weight to be given this circumstance was for the jury."

In *United States v. Lombardozzi,* 335 F. (2d) 414 (2d Cir. 1964), the Court held that it was not error to introduce a gun available to defendant as the type of instrument which could have caused the injury described by the doctor.

■ The introduction of the gun as one that was in the possession of defendant and one that was the type that could have caused the injury described by the doctor was not error. The circumstances hereinabove described correctly connected the gun to the crime and were for the jury to weigh.

■ During the course of the trial, photographs were admitted in evidence as a part of the State's case. The defendant contends the photographs were inflammatory and were improperly admitted. It is apparent from the record that no objection to these photographs was made at the time the judge made them exhibits. Inasmuch as the issue was not raised in the court below, we refuse to consider them on this appeal.

"The rule is well established that if asserted errors are not presented to the lower Court, the question cannot be raised for the first time on appeal. *State v. Alexander,* 230 S. C. 195, 95 S. E. (2d) 160, and *State v. Bolin,* 230 S. C. 204, 95 S. E. (2d) 163." *State v. McCrary,* 242 S. C. 506, 131 S. E. (2d) 687 (1963).

What we have said about defendant's failure to object to admission of photographs is applicable to the exception he would now raise to the court's admitting evidence of other criminal activity. No objection was raised in the trial and the question will not be considered on appeal.

The final question for determination concerns the alleged confession. The defendant asserts that he was under the influence of drugs and that the State failed to carry the burden of proving that his oral confessions were voluntary. It is his contention that by reason of the use of drugs he lacked capacity to understand the Miranda warnings and to volunteer a statement. In determining the voluntary issue, the trial judge followed the procedure recognized in *Jackson v. Denno*, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. (2d) 908 (1964). In that case, it was held that whether a confession was voluntary or involuntary is a factual question for determination first by the judge. Upon finding the confession voluntary, under our practice, he may then submit to the jury, which may refuse to give any weight to it if it finds the confession to be involuntary.

Dr. Pat Elam, general practitioner at the South Carolina Department of Corrections and clinical consultant to a drug abuse program, examined the appellant in Columbia, commencing December 17, two days after he was arrested. He testified that in his opinion the defendant was not normal at the time of the confessions. He went on to say that it was possible that the appellant was normal, but not probable. The confessions were on December 15 and 16. The testimony of the doctor, considered as a whole, is not sufficient to require the conclusion that the defendant was in no condition to make a voluntary confession. At best, it could only create an inference.

Two police officers, who were experienced in the handling of drug cases, testified that the defendant was normal at the time the confessions were made. Their testimony creates the inference that the confessions were voluntary.

The trial judge had before him the uncertain testimony of the doctor and the policemen's testimony that the defendant was normal. The trial judge made his independent determination of voluntariness and then allowed the jury to make their independent determination. There was no error and we find defendant's exception without merit.

It may be argued that some of the questions which defendant has attempted to raise on appeal should be considered by this Court, although not raised in the court below. We have previously held that when capital punishment is to be administered, this Court will search the record and consider exceptions whether properly reserved in the court below or not. *State v. Thomas,* 248 S. C. 573, 151 S. E. (2d) 855 (1966). In the light of our ruling hereinafter vacating the sentence, we hold the rule inapplicable.

The limitations of the rule were stated by our Court in *State v. Anderson,* 253 S. C. 168, 169 S. E. (2d) 706 (1964) :

"We hold, however, that the policy of reviewing questions not preserved during the trial does not extend to cases in which the defendant has received a sentence less than death. This is an appellate court of review and a trial judge should not be reversed on an issue upon which he had no opportunity to rule. The fact that the defendant could have been sentenced to death does not mean that he is entitled to the benefits of the doctrine of *in favorem vitae* which we have applied where the death penalty is imposed."

We find all exceptions challenging the jury finding of guilty without merit. We now consider whether the sentence to death by electrocution can stand in the light of *Furman v. Georgia, supra.* In that case, the Supreme Court of the United States held that the imposition of the death penalty was unconstitutional as applied in Georgia. The method of applying the death penalty in Georgia is similar to that in South Carolina. The judgment in

the *Furman* case was reversed only insofar as the death penalty was concerned and the case was remanded for further proceedings. The *Furman* case permits us to affirm the judgment of conviction of the defendant of murder and to reverse only the imposition of the death penalty, leaving the defendant subject to sentence under Section 16-52 of the Code, as though the jury had recommended mercy. We followed that procedure in *State v. Gibson,* 192 S. E. (2d) 720.

Accordingly, the judgment of conviction of the defendant is affirmed, but the sentence imposed by the trial judge is reversed and vacated insofar as it imposed the death penalty. The case is remanded to the Court of General Sessions for Chester County for the purpose of sentencing the defendant to life imprisonment under Section 16-52 of the Code, as if the jury had returned a verdict of guilty with a recommendation to mercy.

Affirmed in part; reversed in part.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.