## 19729

The STATE, Respondent, v. William R. HOLLAND et al., Appellants
(201 S. E. (2d) 118)

490

*Edward C. Cushman, Jr., Public Defender for Aiken County, South Corolina,* and *Sylvia W. Westerdahl Asst. Defender, for Aiken County* of Aiken, South Carolina, *for Appellants, Leland, Faust, Poe and Davis,* cite: ▮▮▮▮▮

*Kermit S. King, Esq.,* of Columbia, *for the Appellant, Holland,* cites: ▮▮▮▮▮

*Messrs. Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., and Dudley Saleeby, Jr., Asst. Attys. Gen.,* of Columbia, and *Leonard A. Williamson, Sol.,* and *La-Vaun Fox, Asst. Sol.,* of Aiken, *for Respondent,* cite:

November 28, 1973.

Moss, Chief Justice:

At the 1971 October Term of the Court of General Sessions for Aiken County, William R. Holland, Osgood M. Leland, Gary V. Faust, Bruce G. Poe, Dennis Davis, the appellants herein, and Richard Lee Richards and Danny W. Robertson were indicted for the murder of one Thomas Bolin.

The case came on for trial at the same term of the court before the Honorable James A. Spruill, Jr., Presiding Judge, and a jury. At the time of the trial Danny W. Robertson had not been apprehended, and Richard Lee Richards entered a plea of guilty. After a week long trial, the jury returned a verdict of guilty of murder without recommendation to mercy as to the appellants.

At the conclusion of the testimony offered by the State and upon the close of all of the testimony, the appellants moved for a directed verdict of not guilty. After the rendition of the verdict the appellants made a motion for judgment *non obstante veredicto,* and in the alternative for a new trial. The trial judge took the motion for a new trial under advisement and then imposed the sentence of death upon the appellants, who had been found guilty by the jury. Thereafter, Judge Spruill ordered the proceedings of the trial to be transcribed in order that he might study the same prior to ruling on the post-conviction motions of the appellants. After the delivery of the transcript of the trial proceedings, Judge Spruill, on July 26, 1972, heard oral arguments upon the motions made. The hearing of the motions of the appellants was delayed by agreement of counsel because of the cases pending in the United States Supreme Court concerning the constitutionality of the imposition of the death penalty. The decision of the United States Supreme Court, on June 29, 1972, in *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. (2d) 346, had the effect of invalidating the appellants' sentences to death by electrocution.

The trial judge, by his order dated August 30, 1972, refused the motion of the appellants for a new trial, upon the grounds hereinafter discussed, but did remand the case to the Court of General Sessions for Aiken County for the re-sentencing of the appellants in the light of the decision in *Furman v. Georgia.* Thereafter, in due course, the appellants were re-sentenced by the Honorable Louis Rosen, the then presiding judge, to serve life sentences.

The appeal in this case, which was timely noticed, relates to the pre-trial, trial, and post-trial rulings of the presiding judge. The appellant Holland has filed a separate brief and the other appellants a joint brief. Because the questions posed in the separate briefs are substantially the same, only one disposition thereof is necessary.

The appellants charge the trial judge with error in refusing to grant a continuance in this case.

Thomas Bolin was killed on June 18, 1971, and all of the appellants were arrested shortly thereafter. Each was represented by counsel at a preliminary hearing conducted on August 30, 1971. The trial began on October 12, 1971, more than three and one-half months after the date of the alleged offense. The appellants cited as justification for the continuance the need to prepare for the eventuality that Richard Lee Richards might plead guilty and thereafter testify in behalf of the State. The record shows that this eventuality never materialized. Richards did enter a plea of guilty but never testified.

We have held in numerous cases that a motion for a continuance is addressed to the discretion of the trial judge and his disposition thereof will not be reversed unless it is shown that there was an abuse of discretion to the prejudice of the appellants. *State v. Britt,* 235 S. C. 395, 111 S. E. (2d) 669. There was no error on the part of the trial judge in refusing the motion based on the ground stated:

The appellants also assert error, by a post-conviction motion, on the part of the trial judge in that they were prejudiced by the lack of time available in which to study a list of additional veniremen drawn five days prior to the trial.

The trial judge refused to find that any error was committed in denying the motion for a continuance, ruling instead that the period available was adequate to enable counsel to study a new jury list. In *State v. Britt,* 237 S. C. 293, 117 S. E. (2d) 379, a similar question was raised.

We there held that there was no error in the denial of a motion for a continuance to enable the defendants to study a list of the extra jurors who had been drawn five days prior to trial. We find no error in this respect.

The appellants charge that the trial judge committed prejudicial error in refusing their motions for a separate trial on the ground of dissimilarity of the defenses and that testimony to be offered by the State would be admissible and relevant as to one defendant and inadmissible and irrelevant as to the others. The motions were on the further ground that some of the appellants would testify and others would remain silent, and this would have the effect of prejudicing the jury with respect to any of the appellants who elected not to testify.

This Court has repeatedly held that a motion for a severance and separate trial on the part of one or more defendants, where several persons are jointly charged with a criminal offense, is addressed to the discretion of the trial judge, and only an abuse of that discretion would constitute reversible error. *State v. Harvey,* 253 S. C. 328, 170 S. E. (2d) 657. Since the appellants were jointly charged with the murder of the deceased, they were not entitled to be tried separately as a matter of right. *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379.

A careful review of the record in this case clearly shows that the rulings of the trial judge and his cautionary instructions to the jury protected the rights of each individual appellant and there was no prejudice arising out of their joint trial. It follows that there was no abuse of discretion on the part of the trial judge in refusing the motion of the appellants for separate trials.

The appellants allege error on the part of the trial judge in refusing their pre-trial motion to dismiss the indictment and venire on the ground that pre-trial publicity concerning their case would prevent a fair and impartial trial.

At the hearing of the motion, the appellants introduced articles from various newspapers and magazines and called attention to radio and television coverage of the case. Based thereon it was argued that the appellants could not receive a fair trial in Aiken County or in any other county in this State. It was further argued that it would be impossible to select a fair and impartial jury in Aiken County or in the surrounding counties. We point out that there was no motion for a change of venue based upon the ground that a fair and impartial trial could not be had in Aiken County.

In *State v. Ham,* 259 S. C. 118, 191 S. E. (2d) 13, a motion was made to dismiss the indictment on the ground of undue publicity, and we characterized such position as "a novel one and we have not been able to find a precedent for such dismissal nor has he cited any authority for such." We concluded in the *Ham* case that the appellant was not entitled to a dismissal of the indictment against him for pretrial publicity which he considered adverse to him. Our decision in *Ham* dictates that the motion to quash the indictment and the venire was properly refused.

It is the duty of the trial judge to assure himself that each and every prospective juror is unbiased, fair, and impartial. In this case the trial judge, under his *voir dire* examination, asked all prospective jurors the statutory questions required by Section 38-202 of the 1962 Code of Laws. Additionally, the trial judge questioned the jurors to determine the existence of any bias, prejudice or adverse influence from newspaper publicity and discussion of the case in the community. In response to the questions by the trial judge, the jurors selected to try this case stated that they were not biased or prejudiced and could give the appellants a fair and impartial trial. It is thus apparent from the *voir dire* examination of the jurors that the claim of prejudice from pre-trial publicity was not established. The trial judge properly refused the motion of the appellants to quash the indictment and the venire. *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379.

Prior to trial, counsel for the defendant Richard Lee Richards made a motion that he be committed to the State Hospital for psychiatric examination. This motion was refused, but the trial judge stated that if Richards entered a plea of guilty or was convicted he would sign an order giving him a mental examination. The trial judge further stated that if it should develop that Richards was mentally ill or insane, a new trial would be granted.

The appellants assert that the trial judge erred in ■ refusing the motion that Richards be committed to the State Hospital for psychiatric examination, alleging that such refusal denied them any testimony relative to the mental capacity of Richards at the time of the slaying. of Thomas Bolin.

.We have held in many cases that under Section 32-969 of the 1962 Code, as amended, that the decision as to whether a defendant in a criminal case should be committed, on motion of his attorneys, to the State Hospital for examination rests in the trial court's discretion and will not be set aside unless there is a clear showing of abuse in the exercise of such discretion. *State v. Sharpe,* 239 S. C. 258, 122 S. E. (2d) 622. We have carefully reviewed the record in this case and find that there was no showing by Richards that would warrant the granting of his motion. It follows that the trial judge did not abuse his discretion when he failed to grant this motion.

It is apparent from the record that the appellants ■■ made no objection or exception to the refusal of the trial judge to commit Richards to the State Hospital for mental examination. In as much as the issue was not raised by the appellants, it is not properly before this Court for consideration. The rule is well established that if asserted errors are not presented to the lower court, the question cannot be raised for the first time on appeal. *State v. Bellue,* 259 S. C. 487, 193 S. E. (2d) 121. This exception of the appellants is overruled.

The trial judge ruled that since the appellants were being jointly tried they were entitled to twenty peremptory challenges. The appellants contend that this was error.

It is provided in Section 38-211 of the Code, that any person arraigned for the crime of murder is entitled to ten peremptory challenges; "But in no case when there shall be more than one defendant jointly tried shall more than twenty peremptory challenges be allowed in all to the defendants."

The appellants challenge the constitutionality of the aforesaid statute because it limits the total number of challenges available to multiple defendants tried jointly to less than the number they would otherwise be entitled to if tried separately. The constitutionality of this statute was before our Court in *State v. Wyse,* 32 S. C. 45, 10 S. E. 612. We there held that the legislature may limit the number of peremptory challenges, even in capital cases, without impinging on any constitutional right. We said:

"The exception raising the question as to the constitutionality of the recent act reducing the number of challenges in jury trials, we think is untenable. True, the constitution declares that 'the right of trial by jury shall remain inviolate,' and this guarantees the continuance of this *right* as it existed at the time of the adoption of the constitution. But this does not prevent the legislature from regulating this right, provided the fundamental requisites thereof are not impaired or destroyed; that is to say, provided its number and unanimity and its impartiality are not violated, subject to the exception of the fundamental requisites, such as those mentioned above."

The record shows that although the trial judge limited the appellants to twenty peremptory challenges, they exercised only seventeen of them. It follows that the appellants suffered no prejudice by the ruling of the trial judge that they were only entitled to twenty peremptory challenges.

*State v. Gantt,* 223 S. C. 431, 76 S. E. (2d) 674, and *State v. Britt,* 237 S. C. 293, 117 S. E. (2d) 379.

The record shows that the State concluded its testimony on the morning of the third day of the trial. Counsel for the appellants then requested a recess until after lunch in order to consult with their clients. This motion was denied but the trial judge did grant a brief recess. The appellants allege error in this connection.

We have held that the granting or the refusal of an adjournment or suspension of a trial of a criminal case rests in the sound discretion of the trial court. *State v. Evans,* 202 S. C. 463, 25 S. E. (2d) 492. There was no abuse of discretion here.

Counsel for the appellant Holland, on the third day of the trial, moved for a mistrial or an inquiry into the status of a particular juror. The motion was based upon the fact that the juror, along with approximately 2500 other persons, was employed at the same plant as one of the State's witnesses. This particular juror was a member of the jury panel that had been extensively examined on *voir dire* as to fairness and impartiality. No showing was made to the court at trial, nor has any been made since, to indicate bias or lack of impartiality on the part of this juror. Under these circumstances, there was no error on the part of the trial judge in refusing the motion.

The appellants contend that the trial judge committed error in not granting a new trial because the verdict of the jury was a result of passion and prejudice. This contention is based upon the brevity of the jury's deliberation. The record shows that the jury received this case at 5:15 P. M., returned to the courtroom to make an inquiry at 6:00 P. M., and then returned to the jury room. The verdict of guilty was rendered at 6:55 P. M.

We think the exception posing this question is without merit. In *State v. Chandler,* 126 S. C. 149, 119 S. E. 774,

we held in a murder prosecution that the defendant had a fair and impartial trial, though the jury took only nineteen minutes to arrive at a verdict. In the recent case of *State v. DeWitt,* 254 S. C. 527, 176 S. E. (2d) 143, we held:

"There is no prescribed length of time for a jury to reach a verdict. Such must of necessity be left to the judgment of the jury. Something more must appear, therefore, to warrant interference with a jury's verdict than the mere brevity of their deliberations. 23A C. J. S., Criminal Law, § 1368, at page 976."

We call attention to an annotation in 91 A. L. R. (2d) 1238, where it was said "surprisingly, no criminal case has been found in which haste or shortness of time taken by a jury in arriving at its verdict was held to amount to reversible error." Numerous cases are cited in support of the foregoing statement. The exception posing the foregoing question is found to be without merit.

It is charged that the trial judge erred in not instructing the jury as to the law relevant to manslaughter, assault and battery of a high and aggravated nature and accessory after the fact to murder. We have carefully examined the testimony in this case and it fails to suggest any theory upon which a verdict of manslaughter, assault and battery of a high and aggravated nature, and accessory after the fact to murder could rest. Instructions to the jury on these offenses could have no application. The evidence admits of no other inference than that Thomas Bolin was murdered and the sole issue before the jury was whether the appellants here had participated in such murder. *State v. Weldon,* 89 S. C. 308, 71 S. E. 828; *State v. Edwards,* 194 S. C. 410, 10 S. E. (2d) 587, and *State v. Britt,* 235 S. C. 395, 111 S. E. (2d) 669. This exception is overruled.

The appellants charge the trial judge with error in refusing their motions for directed verdicts and judgment *non obstante veredicto.*

The rule for determining whether the trial judge was in error in not directing a verdict has been often stated by this Court. We quote from *State v. Wheeler,* 259 S. C. 571, 193 S. E. (2d) 515, the following:

"In deciding whether the court erred in not directing a verdict in favor of the appellants, we must view the testimony in the light most favorable to the State. When a motion for a directed verdict is made, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Jordan,* 255 S. C. 86, 177 S. E. (2d) 464."

In light of the foregoing rule, there is evidence from which the jury could conclude that the appellants were members of or connected with a motorcycle gang or club known as the Tribulators, and they combined, conspired and agreed to go to the clubhouse of the Dixie Dragons, another motorcycle club, to steal the motorcycles belonging to the Dragons. In order to transport these motorcycles, a trailer had been rented which was driven to the Dragon clubhouse and placed at a side door so that the motorcycles could be easily loaded therein. At the time the appellants arrived at the clubhouse they found present Thomas Bolin, another man, and two women. All of the appellants went into the clubhouse and whereupon the two women attempted to leave but were not allowed to do so. There was testimony that the appellant Holland bound and gagged Thomas Bolin and the other man. As to Bolin, a witness testified that Holland shoved the gag into his mouth, and tied "the rag so tight that it squeaked in the back". The two women were also bound, gagged and later stabbed. There is testimony that four of the appellants removed the motorcycles from the Dragon clubhouse and loaded them

into the trailer. There is evidence that Richard Lee Richards stabbed Thomas Bolin after he was bound and gagged. The other man was likewise stabbed after he was bound and gagged. The pathologist who conducted an examination of the body of Thomas Bolin concluded that asphyxia was probably the most important cause of death in combination with loss of blood from the stab wounds.

We think that the trial judge committed no error in refusing the motion of the appelants for directed verdicts and judgment *non obstante veredicto*. There was evidence, as is heretofore stated, that the appellants agreed or conspired to commit the crime of grand larceny, which is a felony, and each party is criminally responsible for the acts of his associates or confederates in furtherance or in prosecution of the common purpose for which they combine. The rule is well stated in *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379, as follows:

"It is further well settled that, if two or more combine together to commit an unlawful act, such as robbery, and, in the execution of the criminal act, a homicide is committed by one of the actors, as a probable or natural consequence of the acts done in pursuance of the common design, all present participating in the unlawful undertaking are as guilty as the one who committed the fatal act. This principle was stated in *State v. Cannon,* 49 S. C. 550, 27 S. E. 526: 'The common purpose may not have been to kill and murder, but if it was unlawful, as, for instance, to break in and steal, and in the execution of this common purpose a homicide is committed by one, as a probable or natural consequence of the acts done in pursuance of the common design, then all present participating in the unlawful common design are as guilty as the slayer.' "

Viewing the evidence in this case in the light most favorable to the State, it appears that each and all of the appellants were engaged in the commission of a felony. In the execution of this common purpose, Thomas Bolin was mur-

dered by one or more of them as a probable or natural consequence of the acts done in pursuance of the common design. Therefore, all of the appellants being present and participating in this unlawful common design are as guilty as the slayer.

The appellants charge the trial judge with error in overemphasizing portions of his charge relative to the law of criminal responsibility.

We have carefully examined the charge of the trial judge with reference to the criminal responsibility of all of the appellants where a homicide was committed in furtherance of and pursuant to a common design to commit a felony. We find no error therein. There was ample evidence to find that the appellants were each responsible for the murder of Thomas Bolin because of the extent of their participation in the commission of a felony, all of which was part of a shared criminal intent.

The appellants charge the trial judge committed reversible error by commenting briefly in his charge upon the law of self-defense as a basis for a more detailed discussion of the defense of coercion. This question is not properly before us for consideration because the appellants did not raise any objection to this instruction at the trial, although full opportunity to do so was afforded them pursuant to Section 17-513.1 of the Code.

The appellant Holland asserts that the trial judge committed error by a charge upon the facts.

The charge to which this objection is directed was as follows:

"The killing of an innocent man cannot be justified or excused on the ground that it was done under threats and compulsion from third persons in order to save the slayer's own life; *especially where he fails to embrace an opportunity to escape or to protect himself after being threatened, or where the compulsion was not such as to make the accused*

*a mere physical instrument acting without will of his own and moved exclusively by another."*

The underlined portion of the charge above quoted is that which the appellant objects to as a comment upon the facts. After the trial judge had completed his charge to the jury, he accorded to the appellants, pursuant to Section 17-513.1 of the Code, the opportunity for objection to the charge. Counsel for the appellant Holland objected to the charge on the ground that "the instruction is not applicable to the facts as are present in this case". Holland now takes the position, contrary to his stated objection, that the charge was a comment upon the facts. If the appellant thought the foregoing charge violated Art. V, Sec. 26 of the Constitution, counsel should have made timely objection upon such ground. No such objection was interposed at the trial and it cannot be raised for the first time on appeal.

It is our conclusion that all of the exceptions of the appellants are without merit and the judgment below is,

Affirmed.

LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting):

Being of the view that there was prejudicial error requiring a new trial, I most respectfully dissent. To better understand the issues a few additional facts need to be stated. The organizational structure of the club known as the "Tribulators" included "prospects" (those persons being considered for membership); "probates" (those persons already accepted conditionally as members); and "patchwearers" (those persons already members with full rights). The officers of the club were, of course, "patchwearers". There was a president and "enforcer", Richard Lee Richards alias "Juicer".

All of the defendants charged in this case were "patchwearers" save Holland, age 19 at the time of the offense,

who was a "probate" and affiliated with the club some three or four months, and Davis, age 23, a "prospect" for only five days prior to the date of the crime. There is substantial, undisputed testimony in the record to the effect that intra club discipline was so severe that either a "prospect" or a "probate" was subject to immediate danger in the event he failed to follow orders, particularly the orders of the "enforcer". Neither Holland nor Davis was permitted to attend the meeting of the "patchwearers" when plans were made to go to the club house of the Dixie Dragons and it is inferable that neither of them knew just what the plans were until after they all were present at the Dixie Dragons club house. There is evidence that all defendants, other than Richards, the "enforcer", were under the orders of Richards and, with respect to Holland and Davis, there is strong evidence to the effect that participation on their part was induced by their fear of disobeying the orders of Richards.

It is clear that Holland participated in the binding and gagging of Thomas Bolin and the other male, but evidence that they were not tightly enough bound and gagged to satisfy Richards who himself tightened the gags, etc. The two women were both gagged and bound, with Davis, under the order of Richards, being the principal participant. Both, however, were intentionally so loosely bound by Davis that they managed to make their escape within minutes after all Tribulators left the scene.

There is evidence reflecting the fact that after the motorcycles had been loaded into the trailer most, if not all of the defendants, other than Richards, urged upon him an immediate departure from the scene. Richards, however, insisted upon returning to the club house and attempted to kill all of the bound people by cutting their throats before he would depart. The two women were not mortally wounded but both men victims died. When Richards departed from the club house he announced to his companions that he had killed all four of them.

The medical testimony was to the effect that Bolin had an irregular cut below the right side of the jaw and a very sharp incision type of wound some two and a half inches below the left ear that cut across the external jugular vein on the left side. There were moderately extensive rope burns around the neck and symptoms indicating a significant degree of strangulation and asphyxia. The doctor testified, *inter alia,* that there was an extensive blood loss and that the wound to the jugular vein was most probably sufficient to cause death. The doctor gave it as his opinion that death was the result of a combination of Bolin's various injuries and said he thought that asphyxia was probably the most important, but declined to give a positive opinion as to a single cause of death, stating, *inter alia,* that either of Bolin's wounds or asphyxia could have caused his death.

While no time intervals are specifically disclosed by the evidence, it is inferable that Bolin had been bound and gagged for quite some time before Richards sought to kill him by cutting his throat. The evidence is clear and undisputed that Bolin was alive until after he was stabbed by Richards. One of the bound girls made her way to a nearby residence within minutes after the Tribulators departed the scene, from whence a call to the police was made, and upon the arrival of the police at the scene, Bolin was dead. When the medical evidence is considered in the light of the other facts disclosed by the evidence, it is clearly inferable that the knife wounds inflicted by Richards were truly the cause of the death of Bolin and that but for such, Bolin would still be alive.

It thus follows that under a correct understanding and application of the so-called felony murder rule, the jury could have found, under the evidence, that the murder of Bolin was committed by Richards alone and that such murder was not committed in the course of the perpetration or carrying out of any common felonious scheme, nor as a natural or probable result thereof. In the event of such a

finding, the evidence still warranted and required the submission to the jury of the issue of whether or not the defendants, other than Richards, were guilty of assault and battery upon the said Bolin, they having either personally or vicariously participated in binding and gagging him. To the extent that they voluntarily participated, not under such duress as to render participation excusable, malice accompanied the assault and hence the degree thereof would have been assault and battery with intent to kill. I am of the opinion that His Honor erred in failing to submit to the jury the issue of the lesser offense of assault and battery with intent to kill as to all defendants. It is true that counsel's request to charge mentioned only assault and battery of a high and aggravated nature and the request should have been more precise, but such imprecision can and should be waived.

The *in favorem vitae* rule is now inapplicable solely because of intervening decisions of the United States Supreme Court. Aside therefrom, however, there is abundant precedent for this Court waiving the failure to precisely raise a particular issue where a defendant has been deprived of a substantial right in the course of his trial and his liberty is at stake. *State v. Hollman,* 232 S. C. 489, 102 S. E. (2d) 873; *State v. Owens,* 124 S. C. 220, 117 S. E. 536; *State v. Parler,* 217 S. C. 24, 59 S. E. (2d) 489; *State v. Lyles,* 211 S. C. 334, 45 S. E. (2d) 181; *State v. Stevens,* 116 S. C. 210, 107 S. E. 906.

The appellants contend that the trial judge overemphasized, to the prejudice of the appellants, the proposition that one may be criminally responsible for the acts of associates or confederates in the furtherance of or the execution of a common felonious purpose or design; while, on the other hand, inadequately charging the contrary proposition that one is not criminally responsible when such acts of others were not done in the furtherance of the common design nor as the natural or probable result thereof. An analysis of the

charge convinces the writer that the trial judge, albeit quite unintentionally, erred in this particular, especially in the light of inferences which might reasonably have been drawn from the evidence as to the actual commission of the murder. The entire charge consisted of approximately thirty pages in the record, of which about one-third were devoted to circumstances under which one could be held vicariously and criminally responsible for a homicide committed by another, including a number of specific illustrations. No example or illustration was given of circumstances under which one might not be vicariously liable and in only one instance, in a very few lines, was the jury told definitely that if the killing had "no connection with" the common purpose and did not ensue as a probable result of an attempt to execute it, the slayer alone would be responsible for the homicide. Under the evidence in this case, a cardinal issue to be determined by the jury was whether or not the homicide was or not committed in furtherance of a common felonious scheme and was or not a natural and probable result thereof. Under the circumstances, the appellants were entitled to a full and clear-cut instruction to the effect that if the State failed to prove beyond a reasonable doubt that the homicide so occurred, the appellants should be acquitted of homicide.

For the foregoing reasons, I would grant all defendants a new trial. The exceptions and the briefs of counsel raise other quite serious questions which, in the view of the writer, are not squarely faced or adequately dealt with in the majority opinion. I shall briefly mention, but not endeavor to decide, some of these questions, since lengthy consideration thereof would be pointless in the absence of a majority of the Court concluding that the appellants are entitled to a new trial.

The Court declined a request to charge the law applicable to accessory after the fact to murder and the law as to manslaughter, the Court being of the view that all appellants were guilty of murder or nothing. As to accessory

after the fact to murder, there was abundant evidence, in my view, from which the jury could have concluded that one or more of the appellants were guilty of the crime of accessory after the fact to a murder committed solely by Richards. The indictment did not contain a count charging accessory after the fact to murder, and I intimate no opinion as to whether such a charge is embodied within the greater charge of murder, or whether absent such a charge in the indictment a defendant is entitled to waive such and have submitted to the jury the issue of his guilt or innocence of such lesser offense. Assuming a defendant has such right, the evidence required the requested charge.

Counsel for appellants argue with some persuasiveness that appellants were entitled to a charge on the law of manslaughter, the theory being as follows. There is a considerable amount of authority from other jurisdictions for the proposition that, at least under some circumstances, crimes other than homicide committed by one under compulsion and duress are excusable. 22 C. J. S. Criminal Law § 44, p. 135; 21 Am. Jur. (2d) 180, Criminal Law, Sec. 100; Annotation 40 A. L. R. (2d) 908. Counsel concedes that the evidence does not make out a case of voluntary manslaughter within the traditional definition of that crime, but points to evidence tending to prove that one or more of the appellants participated in unlawful conduct. only under duress and coercion with the result that there was no malice on the part of such defendant or defendants, and the homicide, absent malice, could not have constituted murder as to such a defendant even though he was otherwise responsible for the homicide. Even if it should be concluded, after careful examination, that this contention is without merit, I regard it as of sufficient seriousness to require consideration by the members of this Court.

There can be no doubt that horrendous crimes were committed at the club house of the Dixie Dragons on the particular night, or that one or more of the perpetrators de-

serve the maximum punishment allowed by law. The record, however, to say the least, reflects quite varying degrees of moral, if not legal, culpability of the several defendants, and each of them was and is entitled to have fairly and properly determined just which crime or crimes, if any, he is guilty of. In fairness to the trial judge, it should be said that the trial was long, difficult and involved. Had he been afforded the benefit of carefully prepared requests to charge dealing with some of the propositions now argued before us, it is entirely possible that some of the issues on this appeal would not still be involved.

I would reverse and remand for a new trial.